THE CANAL COMMISSIONERS

*v.*

THE VILLAGE OF EAST PEORIA.

*Opinion filed April 17, 1899.*

1. PRACTICE—*when bill for injunction is properly dismissed.* Upon application for a temporary injunction, where the cause is heard on the bill, answer, replication and cross-motion to dismiss, the cross-motion must be sustained if the averments of the bill are not sufficient to warrant interference by equity.

2. SAME—*motion to dismiss is properly treated as a demurrer though answer is filed.* A cross-motion to dismiss a bill for an injunction, although an answer and replication have been filed, is properly treated as a demurrer admitting all facts properly pleaded, but not inferences of law therefrom.

3. COURTS—*facts of which a court of equity will take notice.* A court of equity will take judicial notice of an incorporated village and of a navigable river and its tributaries or feeders, and of the fact that, notwithstanding such river is the natural outlet for drainage from surrounding territory and receives large quantities of sediment and *debris* from its tributaries, its navigability is not necessarily destroyed thereby.

4. DRAINAGE—*village may deepen and straighten channel of creek for better drainage.* An incorporated village may deepen and straighten the channel of a creek flowing through its limits, to protect its streets from overflow in time of freshet, and may extend such channel to a navigable river to which the creek is a tributary, unless by so doing a nuisance is created which unreasonably interferes with navigation.

5. INJUNCTION—*equity will not control discretion of municipality in absence of abuse.* Where municipal authorities are acting within their well recognized powers, or are exercising discretionary powers, a court of equity cannot interfere unless such powers are being manifestly abused.

6. SAME—*when bill for injunction shows want of equity.* A bill by canal commissioners to enjoin an incorporated village from enlarging and changing the channel of a natural tributary to a navigable stream, upon the ground that navigation will be impaired by the formation of bars from deposits of sediment, shows a want of equity on its face, where there is no allegation that deposits of sediment will be increased by the new channel.

7. CANALS—*act of 1874, concerning Illinois and Michigan Canal, repealed former acts.* The Canal act of 1874, (Rev. Stat. 1874, p. 188,) being a *revision* of all laws relating to the Illinois and Michigan

Canal and the improvement of the Illinois and Little Wabash rivers, repealed all former laws and is a substitute for them.

8. SAME—*limits of canal commissioners' jurisdiction on Illinois river.* The commissioners of the Illinois and Michigan Canal do not have jurisdiction over the whole of the navigable portion of the Illinois river, but only over those parts of the river where they have erected dams and locks and for one thousand feet above and below.

9. PARTIES—*when canal commissioners cannot bring suit in their official name.* The commissioners of the Illinois and Michigan Canal can not maintain a bill in equity in their official name to enjoin an alleged public nuisance in the navigable portion of the Illinois river not within their territorial jurisdiction, but such suit must be brought by information in equity in the name of the People, by the Attorney General.

*Canal Comrs.* v. *Village of East Peoria,* 75 Ill. App. 450, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding.

This was a bill in chancery filed by the Canal Commissioners of Illinois, in their official capacity, in the circuit court of Tazewell county, on May 18, 1898, against the village of East Peoria, a municipal corporation located in Tazewell county, Illinois. The bill was amended September 27, 1897, and alleges, in substance, as follows: That the complainants are the canal commissioners of the Illinois and Michigan Canal, and were legally and duly appointed and qualified, and are now acting as public officers of the State of Illinois for the purposes specified by law; that as such canal commissioners they are legally vested with the control and general management of the Illinois and Michigan Canal, the property thereto belonging, and the locks, dams and other improvements for the navigation of the Illinois and Little Wabash rivers, in said State; that such control extends upon the Illinois river from Peru, Illinois, to a point one thousand feet below the Copperas creek lock, and it is made their duty to cause the said canal, locks, river and appurtenances to be kept in good and sufficient repair for naviga-

tion by water; that the Illinois river, between the points aforesaid, is a navigable stream and is appurtenant to the said canal, locks and dams composing the improvement of the Illinois and Michigan Canal, and that such river, between the points aforesaid, lies wholly within the State of Illinois, and is kept and maintained in a navigable condition by said canal commissioners, who have expended, and who do now annually expend, large sums of money in keeping the channel of said river in an unobstructed condition; that there has been erected at Henry, Illinois, on the Illinois river, by complainants, a dam extending across the said river for the purpose of improving the navigation thereof, and creating above said dam, in and upon the said river, a deeper stage of water than would exist in a state of nature; that they have also erected a lock in connection with said dam, which said dam and lock cost the people of the State of Illinois the sum of $408,437.50; that about seventy-five miles below the lock and dam at Henry, upon the river aforesaid, a lock and dam have been built at Copperas creek by complainants for the purpose of maintaining a greater depth of water in the channel of said river; that the level of the water in said river at said Copperas creek is raised by said dam four feet and eight inches above the natural level of the water in said stream; that the result of the building of the dams and locks at Henry and Copperas creek has been to increase the depth of the water in said river between the said dam at Copperas creek and the said dam at Henry, which constitutes a permanent improvement of the river by permanently increasing the stage of water in said river; that said lock and dam at Copperas creek cost the people of the State of Illinois $358,832.12, and that said locks and dams were erected and are maintained under the supervision of complainants and their predecessors in office; that in addition to the expense aforesaid to the people of the State of Illinois, the dam and lock at Copperas creek cost the United

States the sum of $62,359.80, making the total cost of the Copperas creek lock and dam $421,191.92; that said locks and dams aforesaid have been maintained, kept in repair and protected by complainants; that the channel of said Illinois river connecting the said dams has been deepened, widened, dredged and improved, at the expense of the people of the State of Illinois, from the time of the construction of said locks and dams, by complainants and their predecessors in office; that the receipts of the Illinois and Michigan Canal for navigation thereon depend very largely upon a free and unobstructed use of the Illinois river for navigation between the points aforesaid, and that whatever would impede navigation between the said points would thus result in irreparable injury to complainants; that in the vicinity of the village of East Peoria, Tazewell county, Illinois, on said Illinois river, about two miles therefrom, and between Peru and one thousand feet below the said lock and dam at Copperas creek, the defendant, for the purpose of changing the course of Farm creek and for enlarging certain other creeks and constructing drains, ditches and levees, for the purpose of providing drainage for certain real estate in said county, is constructing and about to complete a certain artificial channel ten thousand feet long and from seventy to one hundred feet in width and of great depth, into which artificial channel it is proposed to turn the course of the said Farm creek and its tributaries and the surface water of the surrounding country, and thereby to discharge the same into the said Illinois river, opposite the city of Peoria, at a point different and other than the natural place of discharge of the waters of said Farm creek; that the said work is being performed by said defendant with all possible speed, night and day and Sundays, and will probably be completed by the 18th or 19th day of May, 1897, and that for such reason the complainant will have no time to give notice of the intended application for injunction; that the Illinois river at the point last afore-

said is a navigable stream, at the ordinary stage of water, of from five hundred to six hundred feet in width; that the artificial channel so in process of construction, when completed, will extend into the navigable channel of the river at right angles, and will discharge a vast amount of sand, soil, silt, sediment, debris and other alluvial matter into the same, and that the direct result of such discharge will be to create in the navigable channel of said stream a bank, bar or barrier that will extend across the said navigable channel, and prove to be an obstruction that will prevent, retard and hinder the use of said river for the purpose of navigation, and will constitute an absolute impediment to the carrying trade of this State for the conveyance and carrying of passengers and freight; that in the event of said bar being formed, a large expenditure of money would be required for dredging the stream so that navigation could be maintained upon the said river, and the relief thereby afforded would be but temporary in its nature and would have to be repeated from time to time, as often as the bar should reform.

There was a prayer for relief, asking that the defendant may make answer, etc.; that it may be ordered to desist from further prosecuting the said work, and from connecting or attempting to connect the said artificial channel with the Illinois river, and to refrain from and desist in attempting to discharge said waters of Farm creek through the said artificial channel, or any other artificial channel, into the said Illinois river, and that the said defendant, its agents and servants and all persons employed by it, may be enjoined from performing the injurious acts above complained of and from further prosecuting or completing the construction thereof, and that the complainants may have such other and further relief in the premises as the nature of their case may require. The bill was sworn to, and has attached thereto the affidavit of Clarence E. Snively asking for an immediate injunction without notice; also the affidavits of

William Keough and Leon McDonald in support of the facts set out in the bill.

Service of summons was had on defendant, and notice that application would be made for an injunction May 18, 1897, before Hon. N. Green, one of the judges of the said court. No application was made at that time, but notice was given of an intended application for an injunction to be heard before Hon. L. D. Puterbaugh, another judge of said court, August 18, 1897. On the hearing the application for a temporary injunction was denied.

On August 25 the defendant filed its answer, and an amended answer was afterwards filed to the bill, in substance as follows: That the defendant is not advised of the official capacity of the complainants except by the allegations of the bill, but calls for strict proof thereof; that the defendant is not advised, and neither admits nor denies, that the complainants, as such pretended canal commissioners, are by law vested with the control and general management of the Illinois and Michigan Canal, etc., or of the locks and dams and other improvements of the navigation of the Illinois and Little Wabash rivers, in said State, but defendant expressly denies that such jurisdiction, or any jurisdiction for any purpose whatever, extends over one thousand feet above the lock at Bridgeport, upon the south branch of the Chicago river, to the termination of the canal basin at Peru, Illinois, and from thence upon the Illinois river to a point one thousand feet below the Copperas creek lock, and expressly denies that the complainants have any jurisdiction or authority whatever over the Illiniois river from a point one thousand feet above the Copperas creek dam to a point one thousand feet below the dam at Henry, and denies that within the territorial jurisdiction aforesaid it is made the duty of complainants to cause said canal, locks, river or appurtenance to be kept in good and sufficient repair and condition for navigation by water; admits that from Peru, Illinois, to a point one thousand

feet below Copperas creek dam, in said State, the Illinois river is a navigable stream for the use of boats and commerce, but expressly denies that the same is within the territorial jurisdiction of the complainants, as alleged, or that the same is in any way appurtenant to any canal, locks and dams composing the pretended improvement of the Illinois and Michigan Canal, or that the same is maintained and kept in a navigable condition by the complainants, as alleged; that defendant is not advised save by the bill of complaint, nor does it deem it material, whether the said complainants have expended large sums of money for maintaining said river in a navigable condition, or whether complainants now annually expend large sums of money in keeping the navigable channel of said river in an unobstructed condition for navigation, and calls for strict proof thereof; alleges that the complainants have no money at their disposal which can lawfully be applied for the purpose of maintaining the said Illinois river in a navigable condition, nor are complainants charged with said duty; that defendant is not advised as to the magnitude of the receipts of the Illinois and Michigan Canal for navigation thereon, nor to what extent such receipts are dependent upon an unobstructed use of said river between the points referred to in said bill, nor is defendant advised, nor does it believe, that whatever would affect navigation by water upon said river between the points last aforesaid would result in irreparable injury to complainants by injuriously affecting navigation upon said canal, and calls for strict proof thereof; that defendant is a municipal corporation, as alleged; that it has recently improved, and, as hereinafter more particularly set forth, deepened, widened and straightened the course and channel of certain creeks, to-wit, Farm creek and Cole's creek, which from time immemorial have existed and flowed through the territory now comprised within the territorial limits of the said village, and beyond said village about one-half mile to

the Illinois river, where Farm creek has from time immemorial discharged itself into said river, but expressly denies that it has changed or altered any other creeks or constructed any ditches, drains or levees whatever, except those hereinafter mentioned and referred to, and further denies that in said improvement it has discharged the said water therefrom at a point different or other than the natural point of discharge, and further denies that the said improvement was made for the purpose or objects set forth in the said bill of complaint, but says that the improvements were made for the purpose of protecting property lying within said village from overflow from said creeks; admits that the dam and lock at Henry have been erected for the purpose of improving the navigation of the Illinois river, but whether built at the cost of the people of the State of Illinois it has no knowledge; admits that the dam and lock at Copperas creek have been erected for the purpose of improving navigation of the Illinois river, but has no knowledge whether or not the water in the Illinois river has been raised by reason thereof, and calls for strict proof; denies that the effect of the erection of the dam at Copperas creek is to permanently increase the depth of water in the river between Copperas creek and Henry, or to constitute a permanent improvement of said river between said points by increasing the volume of water in the navigable channel of the said stream, but alleges that both of said dams have failed to accomplish the objects for which they were intended; that instead of making the navigable channel deeper, they obstruct the same by acting as catch-basins for the mud and other alluvial matter washed into said river from the lands adjacent thereto, etc., which would otherwise be carried away; that while the water in the said river may be higher at times of low water than formerly, it is no deeper; that it has no knowledge or information as to the cost of the dam and lock at Copperas creek, or as to whether the same were

erected at the cost of the people of the State of Illinois, or whether the same were built under the supervision of complainants or their predecessors, but calls for strict proof; that defendant has no knowledge save from the complaint, nor does it deem it to be material, whether the United States expended any money for the foundations of the dam at Copperas creek, but if material it will call for strict proof; that defendant has. no knowledge, and therefore neither admits nor denies, that the locks and dams at Henry and at Copperas creek, and the channel of the Illinois river between said points, have been maintained, repaired and protected by complainants or their predecessors, or that the channel of said river has been deepened, dredged or improved at the expense of the people of the State of Illinois, since the construction of the dams, etc., to the present time, but calls for strict proof; avers that if the acts aforesaid have been at the expense of the people of the State of Illinois, such acts have been void and without authority of law, and that the moneys so used have been misappropriated and misapplied; that the said village of East Peoria was duly organized under the laws of the State of Illinois, in 1883 or 1884; that the territory now and then included therein comprises about three square miles, and that the population thereof is about one thousand; that the entire territory comprised within the said village lies within the Illinois river valley and within the basin of said creeks, Cole's creek being a branch of Farm creek; that the said territory is mostly flat and somewhat low, being on an average about twenty-five feet above said river at low water mark, but that back of said village, about a mile, the surface of the country becomes rough and rises into steep hills and gullies, wherein the said creeks have their source; that in ordinary times the amount of water in said creeks is not great and in places they frequently run dry, but, by reason of the character of the country, in times of freshets the waters thereof rise very rapidly;

that for many years past, in the spring of the year and at the times of heavy rainfalls, the entire territory within said village has been subject to overflow from said creeks; that they unite about the center of said village, and from thence are known as Farm creek; that the said overflow from said creeks for many years has been so great as to seriously affect the comfort, health and lives of the inhabitants and to cause serious injury to the streets, etc., of said village; that the question of guarding against the same has been a vital question to said inhabitants, and that in the latter part of 1896, in order to relieve against such overflow and drain said territory, and to prevent said injuries, under the supervision of competent engineers it undertook the improvement of said creeks for that purpose; that the scope and character of the same were to deepen, widen and straighten the channel of said creeks through said village, and from thence to the mouth of said Farm creek, into the Illinois river, and that said improvement cost about $20,000, paid for by special assessment; that in making said improvement the original and natural channel of said creek was followed, and where deviated from it was with the object of straightening the same, and that at no place was the original channel departed from more than a few feet; that the dirt excavated was used for embankments, and that no more country is drained than has always been drained through said creeks, the intention of such improvement being to prevent overflow upon the said village; that as the river is neared the country becomes lower and flatter; that at a quarter of a mile the land is about fifteen feet above low-water mark; that the said creeks would, and still do, cut various channels through this low ground in times of flood, while ordinarily they would flow through one channel; that in times past such last mentioned channel, since Illinois was settled, has not always been the same, but for twenty-five years the greater part of the time has been along the channel which

was deepened and improved; that the land along the river where the said creek empties into said river, and above and below for a long distance, belongs to Johnson L. Cole; that his title extends five hundred feet to the center of the stream; that this improvement was made with his consent and approval, and that no deposit will be made except upon his said land, and no deposit will be made in the navigable channel of said river; that said work was performed with all possible speed, nights and days and Sundays; that the work was completed to the Illinois river, and connected therewith on or about May 20, 1897, and since then the waters have continued to flow through the said channel into the said river, and that the said work was done by contract with the defendant by Willis & Bros.; that the Illinois river opposite the place where the said channel enters the said river is a navigable stream at the usual depth of water, and that its width is eight hundred feet; that above and below said point the river is used for navigation; that the navigable channel of said river does not exceed fifty to one hundred feet, and that it is located on the opposite side of the river from the mouth of Farm creek and at a distance of five hundred feet therefrom; denies that the said channel enters the river at an angle of ninety degrees, but says that it enters said river at an angle of forty-five degrees and with the current of the river; admits that there will be discharged through the said channel a vast amount of water, together with more or less sand, sediment, soil, debris and other alluvial matter, but denies that the same will be discharged into the navigable channel of said stream; that at or near the same place there has always been a like discharge as the natural and inevitable result of the existence of said creek, and that said deposit was not caused by respondent; that there will be no greater deposit by reason of said improvement than has always existed or than was discharged before the said improvement was made; admits, on information

and belief, that there has always been a tendency to the formation of bars at the mouth of said Farm creek, where the same enters the Illinois river, and that such tendency will still exist and that it is utterly impossible to prevent the same, but expressly denies that such tendency has been increased by the said improvement, but, upon the contrary, has been diminished, and that there is no reasonable ground to believe that the said sand, soil, etc., discharged from the said channel will extend into and across the navigable channel of the said Illinois river, or that the same will ever prove an obstruction that will prevent, retard or hinder the use of said river; denies that the same will constitute an absolute impediment and hindrance to the commerce of the State, or that irreparable injury will result to the channel of said river, or to the Illinois and Michigan Canal, in connection therewith; avers that the said improvement of Farm creek was fully completed and in use shortly after the filing of this bill, and has since then been in use, but expressly denies that, as a result therefrom, in times of heavy rains or freshets, or at other times, such great quantities of sand, soil, etc., have been or will be deposited or carried from said Farm creek into the navigable channel of said Illinois river as to produce there any material bank or bar, or to prove an impediment to the use of the river for commerce, or to produce a greater bar than would have been made by said creek without said improvement; that although the said channel has been in use since shortly after the filing of this bill no such bar has been formed, nor has navigation or carrying trade and commerce been in the least obstructed or hindered by reason of any bar or bank, nor has the navigation of the said river been in any way affected or will it be so affected; denies that complainants have any right, charge or supervision over said river or its navigation at the point where the said artificial channel enters said river, or at any other point for many miles above or below, and that it will not be necessary, nor

would complainants have the power, to make repairs of the kind mentioned in said bill of complaint, or to interfere with the natural course of the river, or with the management of streams tributary thereto and entering therein; that the complainants have no right to interfere with the defendant in the exercise of its corporate power; that the said defendant has full power to make said improvement, and that by reason of said improvement no water will be carried through said channel into the said river other than is naturally tributary thereto; that if the result of making such improvement will be to form bars in the Illinois river, either in the navigable channel or at any other point, yet defendant has full power, right and authority to make the said improvement in manner and form as it was made and is lawfully entitled to maintain the same; that complainants have a full remedy at law; that there is a lack of equity apparent upon the face of the bill.   The defendant prays the same advantage to complainants' bill as though it had pleaded, demurred or excepted to the many errors, etc., therein contained, and prays to be dismissed with its costs.   There was a verification of said answer by W. F. Sommerfield, president of said village board.

The complainants filed a general replication September 25, 1897, and on that day the court heard the application for a temporary injunction, based upon the bill with its amendments, and the answer with its amendments, the affidavits attached to each, and the replication. A cross-motion was made by the defendant to dismiss the bill for want of equity appearing on its face. The court denied the application for an injunction, and on the cross-motion dismissed the bill for want of equity. The case was appealed to the Appellate Court for the Third District, which affirmed the decree of the circuit court, and complainants bring the case to this court and ask for the reversal of the judgment of the Appellate Court, and assign several errors.

CHIPERFIELD, GRANT & CHIPERFIELD, for appellants:

Public officers have implied authority to maintain all actions which the proper and faithful.discharge of the duties of their office require, their rights being commensurate with their public duties and trusts. 19 Am. & Eng. Ency. of Law, p. 522, and cases cited; *Berrien County* v. *Bunbury*, 45 Mich. 79; *Todd* v. *Birdsal*, 13 Am. Dec. 522.

The canal commissioners are public officers and agents of the State of Illinois. They are permitted to sue under the name of "The Canal Commissioners," but are not subject to be sued.   Starr & Curtis' Stat. (2d ed.) chap. 19, sec. 1, par. 3.

The State of Illinois has jurisdiction and control over the navigable streams within its limits sufficient to authorize and empower the legislature to pass a law conferring authority over the same upon its public officers and agents. *Martin* v. *Waddell*, 16 Pet. 367; *Wilson* v. *Marsh Co.* 2 id. 245; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Huse* v. *Glover*, 119 U. S. 543; *United States* v. *Bridge Co.* 1 W. & M. 401; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Cooley* v. *Wardens of Philadelphia*, 12 How. 299; *Corfield* v. *Coryell*, 4 Wash. C. C. 371; *New York* v. *Miln*, 11 Pet. 102; *Houston* v. *Moore*, 5 Wheat. 1; *License cases*, 5 How. 554; *Pound* v. *Turck*, 95 U. S. 459.

The paramount authority of the United States over navigable streams is only called into being by Congress, and in the absence of such exercise of authority by the general government the State has full authority to exercise its dormant powers over the same.   *Railway Co.* v. *Ohio*, 165 U. S. 365; *Wilson* v. *Marsh Co.* 2 Pet. 245; *Withers* v. *Buckley*, 20 How. 84; *Cardwell* v. *Bridge Co.* 113 U. S. 205; *Bridge Co.* v. *Hatch*, 125 id. 1; *Shively* v. *Bowlby*, 152 id. 1.

Under the statutes of the State of Illinois relating to the Illinois and Michigan Canal the canal commissioners have jurisdiction and control over the improvements to the navigation of the Illinois river.   Laws of 1829, 14-18; 1831, 39-44; 1836, 145-147; 1837, 39-44; 1839, 177-183; 1840, 79-81; 1843, 54-62; 1845, 31, 32; 1861, 74; 1861, 277; 1867,

81-88; 1869, 182; 1871, 213-215; 1873, 6; 4 United States Stat. at Large, 234; Const. 1870, separate section 3; Starr & Curtis' Stat. (2d ed.) chap. 19; 1 Debates of Const. Convention, 310-479.

On hearing of a demurrer the matters of fact stated in the bill are admitted to be true, at least for the purpose of argument, and as the office of the demurrer is to bring before the court the right to maintain the bill upon the admissions *pro hac vice* of the entire truth of all its allegations, the court cannot *aliunde* search out or conjecture what other facts might or might not exist to defeat the bill.   6 Ency. of Pl. & Pr. 426.

A demurrer to the bill, or any part thereof, is overruled by a plea either to the whole bill or to some part thereof.   6 Ency. of Pl. & Pr. 414.

After answer filed a demurrer comes too late, unless the answer be withdrawn.   6 Ency. of Pl. & Pr. 424; *Brill* v. *Stiles,* 35 Ill. 305.

The right to demur is waived by an answer.   *Brill* v. *Stiles,* 35 Ill. 305.

It is a rule that a plea or answer, and demurrer to the same, cannot stand together, and the plea or answer overrules the demurrer.   *Gordon* v. *Reynolds,* 114 Ill. 118.

An answer under oath, where by the bill the oath is waived, is not evidence.   *Moore* v. *Hunter,* 1 Gilm. 317; *Andrews* v. *Knox County,* 70 Ill. 65; *Willenborg* v. *Murphy,* 36 id. 344; *Adlard* v. *Adlard,* 65 id. 212.

Matters of which, from their nature, the court will take judicial notice should not be stated in the pleading. 12 Ency. of Pl. & Pr. 1; 3 id. 356.

All the geographical features pertaining to the country, such as its lakes, rivers and mountains, are universally recognized by the courts.   12 Am. & Eng. Ency. of Law, 169.

Courts will take cognizance of the situation of cities or places as to tidal waters, the navigability of streams and the distance between prominent places in the coun-

try, together with such other facts as are universally known within the jurisdiction where they may be brought in question.  12 Am. & Eng. Ency. of Law, 173, 174.

A court of chancery may grant preventive as well as remedial relief, and this may be done where the act threatened would be punishable, under the criminal laws, as a nuisance.  *People* v. *St. Louis*, 5 Gilm. 351; *Laney* v. *Jasper*, 39 Ill. 46; *Craig* v. *People*, 47 id. 487; *Green* v. *Oakes*, 17 id. 249; Houck on Rivers, sec. 305; Gould on Waters, sec. 121.

Injunction is the most effective remedy.  *Craig* v. *People*, 47 Ill. 487; *Green* v. *Oakes*, 17 id. 249; *People* v. *St. Louis*, 5 Gilm. 373.

A court of equity has jurisdiction to prevent the pollution of the water in a stream by emptying the sewage of a city therein, whereby the waters will be rendered unwholesome and unfit for use.  *Dwight* v. *Hayes*, 49 Ill. App. 531; 150 Ill. 273; *Robb* v. *LaGrange*, 158 id. 21; *Barrett* v. *Cemetery Ass.* 159 id. 385.

The right to construct the artificial channel does not carry with it the power to create in the channel of the Illinois river a bar that will impede navigation.  Gould on Waters, sec. 546; Wood on Nuisances, sec. 683, *et seq.*

Obstructions are such impediments as that boats and vessels cannot, by the exercise of skill and care, avoid being injured by in passing; and all such obstructions are *prima facie* nuisances.  16 Am. & Eng. Ency. of Law, 267; *Commonwealth* v. *Crowingshield*, 2 Dana's Abr. 697.

It is a well settled principle of the common law that whatever obstructs travel in public highways and navigable streams is a common or public nuisance.  *McLean* v. *Mathews*, 7 Ill. App. 509; *Earp* v. *Lee*, 71 Ill. 193.

McCULLOCH & McCULLOCH, PAGE, WEAD & ROSS, and T. W. GREEN, for appellee:

The court will take judicial notice that appellee is organized as a village under the general laws relating

to cities and villages.  *Rock Island* v. *Cuinely,* 126 Ill. 408; Rev. Stat. chap. 24, sec. 6.

Also that Farm creek runs through the village, which fact is also admitted by the bill.  *Harmon* v. *Chicago,* 110 Ill. 400.

Appellee has a legal right to deepen, widen, dock, cover, wall, alter or change its channel; to construct drains, levees and dykes, and to acquire land therefor, and to otherwise drain lands lying within its limits. Rev. Stat. chap. 24, sec. 62, clause 30; Laws of 1885, p. 60.

The last cited act constitutes appellee a drainage district.  *Hyde Park* v. *Spencer,* 118 Ill. 446.

In the exercise of its powers appellee is not confined to its own territorial limits, but when necessary may go outside.  *Cullon* v. *Jacksonville,* 147 Ill. 113; *Maywood Co.* v. *Maywood,* 140 id. 216; *Shreve* v. *Cicero,* 129 id. 226.

When a municipality is in the exercise of a legal right, a court of equity has no jurisdiction to interfere except in case of an abuse of such power.  *Brush* v. *Carbondale,* 78 Ill. 74; *Mt. Carmel* v. *Shaw,* 155 id. 37.

The presumption is that it is acting within its powers. *Harmon* v. *Chicago,* 140 Ill. 374; *Osborne* v. *Mobile,* 44 Ala. 493; *Haskill* v. *Bedford,* 108 Mass. 217.

The right of navigation is subject to other rights of a public nature.  *Packet Co.* v. *Peoria Bridge Ass.* 38 Ill. 467; *Bridge Co.* v. *Lonergan,* 91 id. 508.

Such rights may be delegated to municipal corporations.  *Chicago* v. *McGinn,* 51 Ill. 266.

The right of the legislature to legislate concerning drainage is unlimited by any constitutional inhibition. Const. art. 4, sec. 31; *Blake* v. *People,* 109 Ill. 504; *Kilgour* v. *Drainage Comrs.* 111 id. 342.

A motion to dismiss only admits those matters well pleaded,—that is, matters of fact,—and not the inferences, either of fact or law, that may be drawn therefrom. 1 Daniell's Ch. Pr. (3d Am. ed.) 566-568, 581-585; *Greig* v. *Russell,* 115 Ill. 483; *Ebersole* v. *Bank,* 36 Ill. App. 267.

The chancellor will take judicial cognizance of that which is within the range of common observation and of the ordinary course of nature. 3 Greenleaf on Evidence, secs. 269-271; *Railroad Co.* v. *Warner*, 108 Ill. 538.

It is necessary that the bill should show that the complainant has a right to the thing demanded, or such an interest as gives him a right to bring the suit. 1 Daniell's Ch. Pr. 322-324.

A bill brought on behalf of the State must be brought on the relation of the Attorney General, unless otherwise provided by law, and then only in rare cases. Angell on Water-courses, 753, 754; Bispham's Eq. sec. 439.

Where a bill is brought by a private person to enjoin a public nuisance he must show a special injury. Bispham's Eq. sec. 757.

The act of 1874 (1 Starr & Curtis, 537,) being a revision of the law relating to the canal, it repeals by implication all previous enactments, even if the repealing act has not done so. *Culver* v. *Bank*, 64 Ill. 528; *Devine* v. *Cook County Comrs.* 84 id. 590; *Andrews* v. *People*, 75 id. 605.

This statute does not confer upon appellants the jurisdiction claimed by them. They therefore fail to show any right in the subject matter of this suit or any right by law to institute the same. The statute must be strictly construed, and is not to be extended, by implication, to anything not within the general purview of the statute. Endlich on Int. of Statutes, secs. 352, 353, 398, 399.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The first question to be considered is whether the court erred in dismissing complainants' bill on defendant's cross-motion. The record shows the cause came on to be heard upon the bill with its amendments, the answer and its amendments, and the replication, for a temporary injunction, and a cross-motion by the defendant to dismiss for want of equity appearing on the face of the bill. There was nothing before the court but the bill,

answer and replication, and it is a well settled doctrine in chancery that if it appears on the face of the bill there is no equity in it, and no sufficient grounds are disclosed therein why a court of equity should interfere, the bill will be dismissed. (*Edwards* v. *Beaird,* Breese, 70; *Winkler* v. *Winkler,* 40 Ill. 179.) The trial court treated the cross-motion as a demurrer and dismissed the bill for want of equity appearing on the face of the bill. This practice was proper, as held by this court in *Heinroth* v. *Kocher-sperger,* 173 Ill. 205.

Appellants insist that the effect of the motion was to admit all of the facts alleged in the bill and to call for the judgment of the court thereon as to their legal suffi- . ciency. In Daniell on Chancery Practice (vol. 1, 566-568,) it is said: "A demurrer confesses those matters which are well pleaded,—*i. e.,* matters of fact. It does not, therefore, admit any matters of law which are suggested by the bill or inferred from the fact stated, for, strictly speaking, arguments or inferences or matters of law ought not to be stated in the pleadings, although there is sometimes occasion to make mention of them for convenience or intelligibility of the matter of fact.   *   *   * Nor will an inference be admitted which is repugnant to the fact stated or not supported by it; nor will it admit as a fact a statement contrary to that of which the court takes judicial notice, and such averment must be treated as a nullity." In *Newell* v. *Bureau County,* 37 Ill. 253, this court said: "The rule is, as we understand it and have repeatedly stated, that the effect of a demurrer is to admit all the facts properly pleaded, but not inferences of law from those facts.—*Stow* v. *Russell,* decided at April term, 1864; 1 Daniell's Ch. Pr. 601; *Mills* v. *Brown,* 2 Scam. 548." See, also, *Arenz* v. *Weir,* 89 Ill. 25, and *Greig* v. *Russell,* 115 id. 483.

The allegation in the bill and its amendments is, that the village of East Peoria, the appellee, was making and about to complete an artificial or new channel for a

stream known as "Farm creek," so as to carry and turn the course of said Farm creek and its tributaries, and the surface water of the surrounding country, through said new channel into the Illinois river, instead of allowing it to go through the natural channel, as heretofore, the new point of discharge being opposite the city of Peoria, at a point different and other than the natural place of discharge of the waters of said Farm creek; that the artificial channel, when completed, if not prevented by injunction, will discharge a vast amount of sand, silt, sediment, debris and other alluvial matter, and thereby create a bar or barrier in the navigable channel of said river that will prove to be an obstruction to the navigation of the river and a public nuisance. The facts set forth in the bill were not sufficient to warrant the granting of a perpetual injunction.

Under section 6 of article 1, chapter 24, of the Revised Statutes, the court will take judicial notice that the village of East Peoria is organized under the general Incorporation law, relating to cities and villages. This provision is mandatory upon the courts of this State, as held in *City of Rock Island* v. *Cuinely*, 126 Ill. 408. It is set up in the answer and conceded that Farm creek runs through the village of East Peoria.

Under clause 30 of section 1 of article 5 of the City and Village act power is given the city council in cities and the president and the board of trustees in villages, "to deepen, widen, dock, cover, wall, alter or change the channel of water-courses," and by paragraph 334 of the same act corporate authorities are "vested with power to construct drains, ditches, levees and dykes, to erect pumping works, and to acquire the necessary land and machinery for such purposes, and otherwise to provide for draining any portion of the lands within their corporate limits, by special assessment upon the property benefited thereby." (Hurd's Stat. 1889, p. 305.) This statute constitutes appellee a drainage district, as held in *Vil-*

*lage of Hyde Park* v. *Spencer*, 118 Ill. 446. The powers thus granted by this statute gave the municipality authority to extend the drain or sewer beyond the corporate limits for the purpose of obtaining a proper outlet, and having that power, it may acquire land to construct the sewer. (*Shreve* v. *Town of Cicero*, 129 Ill. 226; *Callon* v. *City of Jacksonville*, 147 id. 113.) The village of East Peoria was in the exercise of a legal right, and where the municipal authorities are acting within their well recognized powers, or are exercising a discretionary power, a court of equity has no jurisdiction to interfere, unless the power or discretion is being manifestly abused, as this court held in *Brush* v. *City of Carbondale*, 78 Ill. 74, and approved in *City of Mt. Carmel* v. *Shaw*, 155 id. 37.

The general grant of power to corporate authorities to alter or change water-courses and to construct drains carries with it, by necessary implication, all other powers necessary to make the grant effective and to accomplish the results intended. The Illinois river, while it is a navigable water, is also the natural outlet for the drainage of a large territory, with many other rivers and streams emptying their waters into and flowing through its channel, and among the smaller streams is Farm creek. Of these rivers and creeks, and of the fact that they carry large quantities of sand, sediment and debris into the Illinois river, and have for ages, the courts will take notice, and that still the Illinois river is a navigable river.

Farm creek is a natural water-course emptying into the Illinois river, and appellee has enlarged the channel by deepening, widening and straightening it, and has followed the natural and original channel, for the purpose of preventing its overflow, during freshets, upon the streets of the village of East Peoria. Appellee having the legal right to construct a drain, it had the right to extend it to the Illinois river, unless it used that right oppressively and so as to make it a nuisance and to unreasonably interfere with the navigation of the river.

The bill does not allege that a larger amount of water, with its accompanying sand, silt, sediment, debris or other alluvial matter, would be discharged into the river through the artificial channel than had been before discharged through the natural channel of Farm creek, neither is there anything to show that the tendency to fill up the channel and form bars will be any greater than formerly,—and this, as held by the Appellate Court, justified the circuit court in dismissing the bill for want of equity appearing on its face.

Can the appellants maintain this suit in their official name, as canal commissioners? The bill purports to be a bill in behalf of appellants as canal commissioners of the Illinois and Michigan Canal, and not in behalf of the People of the State of Illinois. In Daniell on Chancery Practice (322) it is laid down as one of the rules of chancery practice that the complainant must show a right to the thing demanded or such an interest in the subject matter as gives him a right to institute a suit concerning it, otherwise the defendant may demur. If a bill was required in behalf of the State to restrain the creation of a public nuisance in a navigable stream, it should be brought by an information in equity in the name of the People of the State of Illinois, by the Attorney General. (Angell on Water-courses,—6th ed.—sec. 565, p. 753; Bispham's Principles of Equity, sec. 439.) In Eden on Injunctions, (262) the author says: "It is now settled that a court of equity may take jurisdiction in cases of public nuisance by an information filed by the Attorney General, though the jurisdiction seems to have been acted upon with great caution and hesitancy,"—citing *Attorney General* v. *Cleaver*, 18 Ves. 211.

We deem it unnecessary to refer to the many acts relating to the Illinois and Michigan Canal passed from 1829 to 1872, for the reason that the act of 1874, (Rev. Stat. chap. 19, p. 188,) which is now in force and under which the present board of canal commissioners derives its au-

thority, purports to be a *revision* of the law in relation to
the Illinois and Michigan Canal and for the improvement
of the Illinois and Little Wabash rivers.  The acts of
February 28, 1867, and February 25, 1869, were expressly
repealed by the general repealing act of 1874.  The act
of 1873, which authorized the board of canal commission-
ers to construct a dam and lock at or near Copperas
creek and to make an appropriation for such improve-
ment was not repealed by this general repealing act, but
was left in force, because the period for the appropria-
tion therein provided for would not expire until after the
adjournment of the next regular session of the General
Assembly.  That appropriation was renewed and ex-
tended by the act of April 8, 1875, (Laws of 1875, p. 6,)
and the canal commissioners were authorized, as soon as
the lock and dam should be completed, to make uniform
rates of toll, and to collect the same in the same manner
as they collected toll from the lock at Henry, and it was
this act that gave the commissioners jurisdiction over
the Copperas creek dam.  The act of 1874, in force July 1,
1874, aptly expresses in its title that it is "An act to *re-
vise* the law in relation to the Illinois and Michigan Canal
and for the improvement of the Illinois and Little Wa-
bash rivers."  This statute being a *revision* of all laws at
that time relating to the Illinois and Michigan Canal and
the improvement of the Illinois and Little Wabash riv-
ers, must be regarded as a repeal of all former laws and
a substitute for those repealed.  In *Culver* v. *Third Nat.
Bank of Chicago*, 64 Ill. 528, this court said (p. 534): "There
is, however, another principle which must settle this
question, and that is, a subsequent statute revising the
whole subject of a former one and intended as a substi-
tute for it, although it contains no express words to that
effect, operates as a repeal of the former. (*Bartlett* v. *King*,
12 Mass. 537; *Towle* v. *Mavett*, 3 Greenl. 22; *Nichols* v. *Squire*,
5 Pick. 168.) These cases are cited in the case of *Board of
Trustees of Illinois and Michigan Canal* v. *City of Chicago*, 14

Ill. 334, with approbation, and such will be found to be the doctrine of the books." (See, also, *Devine* v. *Commissioners of Cook County*, 84 Ill. 590, and *Andrews* v. *People*, 75 id. 605.) This act of 1874 being a revision of the law in relation to the Illinois and Michigan Canal and for the improvement of the Illinois and Little Wabash rivers, was intended by the legislature as a substitute for the previous acts.

Appellants claim that the canal commissioners, as public officers, have authority to maintain this proceeding. Appellants must therefore, if they have jurisdiction over the navigable portions of the Illinois river, acquire it by virtue of this statute. Section 3 of the act of 1874 provides: "For all legal purposes the said commissioners shall be deemed officers of the State, and all deeds, contracts, writings and acts may be made and suits prosecuted by them in the name of the canal commissioners, but they shall not be considered as a distinct corporation or be liable to be sued." By this statute the canal commissioners are not a distinct corporation, but they are mere public officers with limited powers. Their powers are confined by section 8 to the "control and management of the Illinois and Michigan Canal, including its feeders, basins and appurtenances and the property thereto belonging, and all locks and dams and other improvements of the navigation of the Illinois and Little Wabash rivers." The powers so granted are by paragraph 2 of said section 8 to "apply as well to that part of the south branch of the Chicago river within one thousand feet of the lock at Bridgeport, and to the canal basin at and near the termination of the canal on the Illinois river, and to that part of the Illinois and Little Wabash rivers above and below the several locks and dams, within one thousand feet thereof, and to all feeders, basins and laterals, as to the canal, locks and dams."

There is nothing in the act which shows that it was the intention of the legislature to confer upon the canal

commissioners jurisdiction over the whole of the navigable portion of the Illinois river, but the statute has defined the limits of their jurisdiction relating to the canal, and to that part of the river above and below the several locks and dams, within one thousand feet thereof.   Undoubtedly the object of this extending of the jurisdiction above and below the locks and dams was to give effect to the rules and regulations which the commissioners were authorized to make in respect to all matters connected with the navigation and use of the canal, locks and dams, and transportation on or through the same, to a sufficient distance above and below the canal and the locks and dams to protect the property of the State and to regulate and control the movements of boats in approaching and leaving the same, and to control the movements of all persons in their immediate vicinity with reference to their use of the property of the State.   Under "Duties of Commissioners," (par. 1, sec. 9,) the commissioners are required to take all necessary proceedings on behalf of the State to establish the title of the State and recover possession of any canal lands or real estate which may be claimed by or be in the adverse possession of another, and to cause appropriate suits to be instituted in the name of the People of the State of Illinois. Under paragraph 2 of the same section they are authorized to take proceedings in their "official name" to ascertain the compensation for entering upon, using, overflowing or damaging any contiguous lands, in making repairs, building or constructing any dam, lock or other improvement, in the manner and at the time provided by law for the exercise of the right of eminent domain.   By paragraph 3 they are authorized "to cause suits to be commenced and prosecuted against all persons trespassing upon the said canal, locks or dams, or any of the canal lands belonging to the State, and for that purpose they may require the services of the State's attorney of any county in which such suits may be prosecuted."   These

suits for trespassing upon the canal locks, dams or canal lands belonging to the State, are the only ones authorized to be prosecuted by appellants, the canal commissioners. Under the head of "Penalties," in said act, there are ten sections (15-25) which impose penalties for certain offenses committed upon the canal and canal lands. It is then provided in section 26: "The eleven preceding sections shall apply as well to all locks and dams that are or may·be constructed upon the Illinois and Little Wabash rivers, and all feeders, as to the canal known as the Illinois and Michigan Canal." There is nothing in the entire act that makes the Illinois river a part of the canal, or that extends the jurisdiction of the canal commissioners over the river, except as stated in paragraph 2 of section 8. The evident intention of the legislature was to give the canal commissioners control of the canal, its feeders, basins, locks and dams, and one thousand feet of the river above and below the locks and dams, but it was not intended to give them control of any other part of the river. The "improvements" must be construed as referring to those works of improvement as the canal, its feeders, basins, etc., the dam and lock at Henry and the dam and lock at Copperas creek, together with one thousand feet above and below them.

The powers of the canal commissioners being limited to the Illinois and Michigan Canal, including its feeders, basins and appurtenances, and to the works of improvement,—the locks and dams of the Illinois river,—appellants cannot maintain this suit in their official name, as canal commissioners, for a public nuisance committed to the navigable portion of the river outside of their jurisdiction. This must be brought by an information in equity, in the name of the People of the State of Illinois by the Attorney General.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*