ANNIE ZORIE BERRY, Appellee, *vs.* ELIZABETH E. HEISER, Appellant.

*Opinion filed December 22, 1915—Rehearing denied Feb. 2, 1916.*

1. HOMESTEAD—*when widow has no homestead interest to protect.* Where the grantor in a deed, which reserves a life estate in him, subsequently marries and dies before the deed is set aside, his widow has no homestead interest to protect, for the reason that his estate, being for life, terminated at his death.

2. DEEDS—*when a widow has no standing to set aside a deed.* Where a parent makes a deed to a child in consideration of future support, care and nursing during the declining years of the grantor's life and there is a breach of the contract, courts may presume that the contract was made in the first instance with the fraudulent intention of not performing it, and the deed may be avoided at the suit of the grantor; but if the grantor marries after making the deed and fails to file any bill to set aside the deed before his death, his widow has no standing, as devisee of all his property, to maintain such bill. (*McClelland* v. *McClelland,* 176 Ill. 83, distinguished.)

APPEAL from the Circuit Court of Grundy county; the Hon. S. C. STOUGH, Judge, presiding.

O'DONNELL, DONOVAN & BRAY, (J. L. O'DONNELL, of counsel,) for appellant.

FRANK H. HAYES, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Grundy county setting aside a deed of land from James Berry and wife to the appellant, Elizabeth E. Heiser, in a suit in which appellee, Annie Zorie Berry, was complainant.

The following facts were proved and not disputed: James Berry owned a farm of forty acres in Grundy county on which he lived with his wife, Julia Berry, and his only child, the defendant, Elizabeth. He was somewhat addicted to the use of intoxicating liquor and in 1874 the farm was sold for taxes. William S. Foley, son of Julia Berry and step-son of James Berry, was interested for his mother in getting a tax deed of the farm, and he procured an assignment of the certificate on December 1, 1875, and secured a tax deed on June 3, 1876, and thereafter paid the taxes for several years. On February 4, 1903, Foley lived in Iowa but was visiting his mother, and he then told Berry that he would deed the property back to him provided he would make a deed to his daughter, Elizabeth, reserving a life estate to himself and wife, and Berry agreed to do that. Elizabeth was past thirty years old, had never had any advantages, and had lived at home and helped her mother in the housework and worked out-doors on the farm. Foley signed the deed to James Berry, and after it had been sent to Iowa to be signed and acknowledged by the wife it was returned and delivered. During the negotiations Foley and James Berry consulted the attorney who drafted the deed, and the recollection of the attorney was that Berry said he was getting old and his wife was getting old and feeble, and they ought to fix up their affairs so that there would be no trouble thereafter. The deed from Foley to James Berry having been executed, the attorney drafted the deed in question from Berry and wife to Elizabeth and took it to the

farm, where it was executed on March 10, 1903. It expressed a consideration of natural love and affection and one dollar, and reserved a life estate to Berry and his wife and each of them, including the possession, rents, issues and profits. The farm had been assessed that year in the name of James Berry and the taxes were paid by Elizabeth. Ever since that time the farm has been assessed to her, and she has paid the taxes and insured the property for her own benefit. After the deed to Elizabeth was executed she remained at home, working as usual. Her mother, Julia Berry, died on December 28, 1904, and Elizabeth continued to live with her father and work and care for him until her marriage to Peter Heiser on February 26, 1906. Shortly before the marriage Heiser had rented another farm, where he and his wife expected to live. About two weeks before March 4, 1906, James Berry went to a saloon in Carbon Hill and asked the saloon-keeper if he knew a woman that would marry him, and the saloon-keeper said that he did and would get her to come over to the saloon. The saloon-keeper got the complainant, who was a widow with six children, and a marriage was arranged between her and Berry, which took place on March 4, 1906. After the marriage of Elizabeth she and her husband went to Indiana for a week and then came back to the farm and left it, taking such things as she claimed belonged to her mother. The complainant, with her family, came to the farm at the time of the marriage and lived with James Berry until February 3, 1912, when he died. During the last years of his life he was afflicted with a painful and incurable disease. By his will, executed January 26, 1912, he devised all his property to his wife, the complainant saying that he knew that she would care for and educate his son, James Lawrence Berry, an infant four years old.

The disputed question was whether the deed to Elizabeth was made in consideration of a promise on her part to live with her father and mother, and the survivor of them,

and take care of them and bury them. On that question the attorney who drafted the deed and took it to the farm to be executed testified that James Berry and wife said the deed was all right, except that it did not say that Elizabeth was to live with them, and the survivor of them, and take care of them and bury them. The attorney said that he had never heard of that arrangement, and advised them to either have another deed drawn up or a contract to accompany it and be made a part of it; that Elizabeth said she guessed her father and mother knew she would live with them; that she had stood by them and helped them and would not marry and would stay, and the mother said that Elizabeth was a good girl and they were satisfied that she would stay. No change was made and no other contract drawn, and the deed was executed. The attorney testified to subsequent conversations with James Berry, particularly after the child was born, in 1908, when he said that now he had another heir and wanted the farm back, but Elizabeth was not present at these conversations and the testimony was incompetent. The attorney testified that he saw Elizabeth and her father together at one time after the boy was born, when Berry said that she had left, and not only that, but he had another heir and he wanted the farm back, and if she did not give it back he would sue her; that she said she did not want his property if he felt that way about it, but the witness advised her not to re-convey it without consulting her husband, and advised them that it was a family matter and they ought to get together and do what was right. The defendant, Elizabeth Heiser, denied emphatically and categorically everything that was testified to by the attorney concerning the making of any contract or any conversation in his presence after the deed was made. She testified that there was not a word said about drawing any other deed or making any contract to accompany the deed, or that she was to stay with her father and mother, or anything of the kind. Her testimony was that her half-brother,

William S. Foley, made the deed to her father upon condition that the deed was to be made to her, reserving to her parents a life estate, so that they could have the farm for their lives; that she never agreed to stay with them so long as they lived and nothing was said about it.

It will be observed that the conveyance was only of a future interest in the farm after the death of the survivor of the grantors, and that the question whether a contract was made by which Elizabeth, the only prospective heir, who would succeed to the estate at the death of her father, agreed to remain with the parents and work for them during the existence of the life estate was disputed. The question, however, whether the decree was against the weight of the evidence will not be considered, because the complainant, as devisee of James Berry, did not stand in any relation to the contract, if it existed, which would enable her to avoid the conveyance and have it set aside for failure to perform the contract. The interest of the complainant, if any, was as devisee of all the property of her husband, and no title to the real estate passed by the will, for the reason that his estate was for life, only, and terminated at his death. She had no homestead to protect, because the homestead exemption cannot continue after the estate has terminated. The purpose of the exemption is to protect such interests and property as are liable to be seized and sold on execution. (*Brown* v. *Keller,* 32 Ill. 151.) Where a deed is given by a parent to a child in consideration of future support, care and nursing to be rendered by the child in the declining years of the grantor's life, and there is a breach of such condition, the courts may presume that the contract was made in the first instance with the fraudulent intention of not performing it, and the deed may be avoided and the property re-claimed for the purpose of obtaining that which was agreed to be given by the grantee. (*Frazier* v. *Miller,* 16 Ill. 48; *Oard* v. *Oard,* 59 id. 46.) Such a deed is effectual to transfer the title and is voidable merely at the in-

stance of the grantor, who may file a bill in equity to have it set aside on the ground of the abandonment of the contract and the presumed fraudulent intent in entering into it. If the contract was made and Elizabeth without good cause refused to perform it on her part, James Berry might have had it set aside if he saw fit to do so, but he never took any steps to have it set aside. If the contract was made, the right to have it set aside under such circumstances was a mere personal right or privilege, and the bare right to file a bill in equity growing out of the perpetration of a fraud on a party is not assignable. (*Norton* v. *Tuttle,* 60 Ill. 130; *Illinois Land and Loan Co.* v. *Speyer,* 138 id. 137.) In the case of *McClelland* v. *McClelland,* 176 Ill. 83, Mary Mc-Clelland, the owner of a homestead and farm, and Mason McClelland, her husband, conveyed the property to their son in consideration of his furnishing them a comfortable home and support during the remainder of their lives. There was a breach of the contract and Mary McClelland filed her bill to set aside the conveyance. While the suit was pending she died leaving a will, by which she devised her estate to her husband, and on her death being suggested he was substituted as devisee and executor by virtue of the statute. In this case James Berry did not exercise his right (if he had any) to have the deed set aside, the term of the contract (if there was any) had expired, and his personal right or privilege did not pass to the complainant as devisee. If there was a contract to pay funeral expenses which was not complied with, it would only give rise to an action for damages and would not be available for the purpose of setting aside the deed under any rule established by this court.

The decree is reversed and the cause is remanded, with directions to dismiss the original bill and to enter a decree in accordance with the prayer of the cross-bill.

*Reversed and remanded, with directions.*