(No. 14610.—Decree affirmed.)

Lela A. Foston et al. Plaintiffs in Error, vs. Helen Elizabeth Swanson et al. Defendants in Error.

*Opinion filed February 21, 1923.*

1. Deeds—*transfer of possession of contract for conveyance to joint tenants does not affect rights of parties.* A transfer of possession from a wife to her husband of a contract for a warranty deed conveying property to them as joint tenants has no legal effect to change the rights of the parties or constitute a legal relinquishment of the wife's interest in the agreement.

2. Same—*when heirs cannot set aside deed for fraud upon ancestor.* Where a husband and wife contract for a conveyance to them as joint tenants, and the husband subsequently procures an annulment of the marriage but up to the time of his death, two years later, takes no steps to change the contract although having full knowledge of the facts, his heirs cannot, in equity, set aside the deed which the wife, just before the husband's death, caused to be executed according to the contract, even though the bill alleges an oral agreement between the joint tenants, at the time of their separation, for the relinquishment of the wife's interest in the contract.

3. Pleading—*what is admitted by demurrer in equity.* A demurrer in equity admits all the facts properly pleaded but does not admit inferences of law drawn from those facts.

4. Equity—*equitable relief on ground of fraud must be sought without delay.* A party seeking purely equitable relief against a mistake or fraud, such as the annulling of a transaction after obtaining knowledge of the facts, should commence proceedings for relief as soon as reasonably possible, as unnecessary delay after such knowledge amounts to acquiescence, which will defeat the equitable relief.

Writ of Error to the Superior Court of Cook county; the Hon. Denis E. Sullivan, Judge, presiding.

Bates & Adams, (Alva L. Bates, of counsel,) for plaintiffs in error.

George Gillette, C. G. Kinney, and Morton L. Roberts, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The bill of complaint in this cause was filed in October, 1921, in the superior court of Cook county. After it had been amended a demurrer was sustained to the amended bill and it was dismissed for want of equity, whereupon this writ of error was sued out.

The facts as set forth in the amended bill are substantially as follows: Will R. Taggart, now deceased, married Elizabeth Swanson on February 12, 1913, she being called at that time Elizabeth Brosmer, and she so represented herself. They lived together until September 3, 1919, when Elizabeth Swanson Taggart (hereafter called in this opinion Swanson) received knowledge that her former husband, John Swanson, from whom she had never been divorced, was living and residing in Chicago. Upon receiving this knowledge she left Taggart, and he thereupon instituted annulment proceedings against her on account of the fraudulent misrepresentations made at the time of her alleged marriage to him and a decree was entered in his favor. A few months after Taggart's marriage to Elizabeth Swanson, in 1913, he and his reputed wife entered into an agreement for a warranty deed on June 2, 1913, to purchase for $3500 a certain piece of property known as 3642 Vernon avenue, on the south side, in Chicago. Taggart at that time instructed his agent, Frederick H. Bartlett, that the contract should be drawn to run to Will R. Taggart and Elizabeth Taggart, his wife, as joint tenants and not as tenants in common. After the execution of the contract Taggart made payments, under the terms of the agreement, from his own money, assuming an incumbrance of $1600 as part of the purchase price. After paying the first two installments he paid other installments of $20 monthly, beginning August 1, 1913. The amended bill alleges that no part of the purchase price was paid by Elizabeth Swanson, or if she did make any payments they were out of Taggart's earnings; that about April 16, 1920, Taggart became ill and

was unable to earn money at his trade of brickmason, and that his brothers and sisters contributed various sums which totaled $831, the detailed items of which are set forth in an exhibit attached to the bill of complaint; that after she had found her former husband and after a discussion of the matter between her and Taggart when she left him, about September 3, 1919, she delivered the contract to him, and he delivered to her, in consideration thereof, certain furniture and fixtures, which she moved from the premises; that thereafter Taggart had possession of the real estate and his heirs-at-law have been in possession since his death; that Elizabeth Swanson on August 25, 1921, in collusion with Bartlett, the agent heretofore mentioned, fraudulently caused a warranty deed to be issued to her and Taggart, as joint tenants, for said real estate, and that at the time the deed was delivered the contract was still in Taggart's possession, and that Bartlett knew that Elizabeth Swanson had surrendered her rights in the contract; that said conveyance in joint tenancy was a fraud upon Taggart and his heirs, and that Elizabeth Swanson has attempted to secure possession of the premises by suits against the tenants in the municipal court of Chicago, and unless restrained by injunction the tenants will be ousted. It is alleged in the amended bill that the interest on the $1600 trust deed, as well as other debts, will soon be due, and that unless the heirs are permitted to collect the rents and handle the premises irreparable damage will be done, and the bill prays that Elizabeth Swanson be enjoined from incumbering or disposing of the property. The prayer of the bill is that the deed to Taggart and Elizabeth Swanson, dated August 25, 1921, be set aside and declared void.

The payments alleged to have been made by the heirs are thirteen monthly payments on the contract, amounting to $271; interest on the mortgage, amounting to $137; taxes for 1920, $56; payments for plumbing, plastering, decorating and other specified items, amounting to $167;

attorney's fees in the annulment proceedings and in a suit for accounting, $200; total, $831.

The demurrer avers that the bill is for distinct matters and causes and is multifarious; that even though there was fraud in procuring the marriage ceremony and shortly thereafter in the execution of the contract for the purchase of the premises as joint tenants, an action for fraud would not survive to the heirs of Taggart; that an oral assignment from Elizabeth Swanson to Taggart of her interest in the contract is an insufficient basis for the relief asked by the bill.

The pleadings as found in the record show the continuation of the payments on the warranty deed from the time it was entered into until the deed was issued, August 25, 1921. There is no suggestion of any written assignment or change as to the real estate agreement, but it is simply asserted that Elizabeth Swanson, under an oral agreement with Taggart, delivered to him the contract for the deed and took certain furniture and property, thus relinquishing her interest in the real estate. It would appear from the allegations in the amended bill that it was at Taggart's suggestion that Bartlett, the agent, drew the agreement for the deed in the names of "Will R. Taggart and Elizabeth Taggart, his wife, as joint tenants and not as tenants in common," and no further instructions were given Bartlett before the request for the deed was made by Elizabeth Swanson. Ordinarily the agent or person who is to draw a deed or execute it would draw it in the manner designated by the contract. The supposed oral arrangement by which it is claimed the ownership was changed from joint tenancy to a single ownership by Taggart was alleged to have been made about September 3, 1919, and the payments were continued until the balance of the purchase price was paid. Assuming that the thirteen monthly payments which the brothers and sisters made began immediately after Taggart was taken sick, in April, 1920, and were made as provided by the agreement,

they must have continued to May, 1921. Taggart died September 8, 1921. It is true that Taggart brought the suit for annulment as soon as he learned that his supposed wife had a husband living, and if they were not to live together thereafter it would be only natural they should have some property settlement or understanding as to their property rights. Some of the allegations of the amended bill fall short of being statements of fact but are only conclusions of the pleader. The transfer of the mere possession of the agreement for warranty deed from Elizabeth Swanson to Taggart had no legal effect to change the rights of the parties or constitute a legal relinquishment of the wife's interest in the agreement. The effect of a demurrer in equity is to admit all the facts properly pleaded, but it does not admit inferences of law drawn from those facts. (*Canal Comrs.* v. *Village of East Peoria,* 179 Ill. 214; *Ross* v. *Clark,* 225 id. 326; Story's Eq. Pl.—9th ed.—sec. 452.) No facts are stated as to Taggart giving notice to Bartlett & Co. of the alleged oral arrangement between himself and his supposed wife, and we consider as mere conclusions the allegations in the amended bill that "the said Frederick H. Bartlett & Co. knew that the said Will R. Taggart was then, and had for a long time been, the sole and lawful owner of the said contract and all rights,. title and interest in and to said realty;" that "the said defendant Frederick H. Bartlett & Co., and the said defendant Elizabeth Swanson, then and there knew that the said Elizabeth Swanson had surrendered and departed with all her rights, title and interest," etc.

While, doubtless, a bill might be framed and be good as against demurrer which alleged a parol agreement as to the assignment of an interest in a contract for real estate and set out circumstances of part performance that might be sustained in equity, yet where it also appears from the allegations in the bill that payments were continued to be made under the contract as it existed, and nothing was

done from September 3, 1919, to August 25, 1921, to change
the contract or to notify the person from whom the deed
was to be obtained that any change was desired in the deed,
it must necessarily be held that the bill failed to allege suf-
ficient facts clearly and definitely entitling the plaintiffs in
error to recover.   It is clear from the allegations in the
amended bill that Taggart knew about this alleged fraud
some months before his last sickness, and that he had taken
legal steps to set aside the marriage with his supposed wife
and succeeded in having a decree entered to that effect.   It
is clear, also, from the allegations in the amended bill, that
he knew of his supposed wife's interest in the contract, be-
cause he talked with her personally about it after he had
taken steps to set aside the marriage, and he took no posi-
tive steps before his sickness to inform Bartlett that he
wanted to change the contract so that he would be the only
grantee in the deed, and no steps to get such a change were
taken during about seventeen months that elapsed between
his first sickness and his death.

It has long been the rule in equity that where a party
desires to rescind upon the ground of mistake or fraud, he
must upon the discovery of the facts at once announce his
purpose and adhere to that decision.   A party seeking purely
equitable relief against a fraud, such as the annulling of a
transaction after obtaining knowledge of the facts, should
commence proceedings for relief as soon as reasonably pos-
sible.   Acquiescence, consisting of unnecessary delay after
such knowledge, will defeat the equitable relief.   (2 Pome-
roy's Eq. Jur.—3d ed.—1647.   See to the same effect the
holding of this court in *Greenwood* v. *Fenn,* 136 Ill. 146.)
In this last case it is pointed out that the transaction at-
tacked was not void but only voidable, and that although
for good cause shown the alleged sufferer might seek and
obtain redress, until he did bestir himself to end the con-
tract it would stand, and that he must show promptly, as
soon as he discovers the facts, what he claims constituted

the wrong done him. If Taggart by his failure to pursue the plain and obvious course to procure a written assignment of the contract so that it would call for a deed to himself alone placed himself in a position where any right he might have had to attack the conveyance was destroyed, by no line of reasoning can these present plaintiffs in error successfully contend that they stand in a position superior to that of their principal in the transaction.

Plaintiffs in error are suing as the heirs of Taggart, and it is clear that they have absolutely no right to maintain a bill based upon fraud alleged to have been perpetrated upon Taggart, if he, having full knowledge of the facts and every reasonable opportunity to get the effect of the contract changed, refrained from taking any positive action as to such contract himself. This conclusion follows necessarily from the reasoning of this court in *Berry* v. *Heiser,* 271 Ill. 264, and *Roche* v. *Roche,* 286 id. 336. Taggart himself, for over two years before his death and over a year and a half before the completion of the payments on the contract, is shown by the allegations of the amended bill to have been in full possession of all the facts which these plaintiffs in error now so strongly urge upon this court in their own interest, and, acting upon this knowledge, he for himself determined upon his course of action, and although after he obtained this knowledge he obtained a decree holding fraudulent the marriage with his supposed wife, Elizabeth Swanson, he took no legal steps at any time thereafter to change any property rights he had helped or caused to accrue to her under the contract. He apparently recognized the continuation of the contract for the real estate unchanged. The amended bill alleged that after he learned of the fraud practiced upon him by his supposed wife he agreed with her to settle as to this real estate, and she "delivered up possession" of the contract to him, and he, in turn, delivered certain furniture to her. The allegations of

the amended bill are not so positive and definite to require relief in equity as in *Berry* v. *Heiser, supra.* By the reasoning of that case and others it must be held that under the allegations of the amended bill the trial court rightly dismissed the bill for want of equity.

The decree of the superior court of Cook county will therefore be affirmed.          *Decree affirmed.*