## COOK COUNTY

*v.*

## SAMUEL H. McCREA.

1. MUNICIPAL CORPORATIONS—*their powers.* A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in *express words;* second, those *necessarily or fairly implied in* or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Neither the corporation nor its officers can do any act or make any contract, or incur any liability not authorized by the statute or charter by which it is created.

2. COUNTY—*investment of sinking fund.* The county board of Cook county has not the power to order the county treasurer to invest moneys in his hands

collected from taxes levied to create a sinking fund to pay the bonds of the county, issued and sold under the act of February 23, 1872, in the purchase of county bonds issued in 1879 for the purpose of building a court house, and the treasurer is not bound to obey such order.

3. The court is not disposed to deny all power of investment whatever of the moneys of a sinking fund, and compel them to remain *in specie* in the county treasury, and lie idle and unproductive until required to be applied. But it seems the investment must be made in public securities readily convertible into cash.

This was an application for a *mandamus*, by Cook county, against Samuel H. McCrea, treasurer of Cook county.

Mr. CONSIDER H. WILLETT, for the petitioner.

Messrs. STILES & LEWIS, for the respondent.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an original application to this court for a writ of *mandamus* to compel the county treasurer of Cook county to invest moneys in his hands of a certain sinking fund, in certain bonds of said county.

The facts are these: Under the act of February 23, 1872, (Rev. Stat. 1874, p. 314,) Cook county issued and sold $1,500,000 of bonds, known as "fire bonds" or "new indebtedness." Of these, $1,389,000 are now outstanding and mature May 1, 1892. From year to year the Board of County Commissioners of Cook county have levied taxes "to establish a fund to pay the principal of said bonds when the same should mature," and there is now in the hands of the defendant, who is treasurer of Cook county, the sum of $111,216.59 belonging to said fund.

In 1879, the issue of $750,000 of the bonds of said county was duly authorized, for the purpose of building a court house in said county. Of these, $150,000 are yet in the hands of the county, undisposed of. The county board of the county, by resolution of March 31, 1879, directed the defendant to take $111,200 of said fund in his hands and invest it in said

new bonds at par, and hold the same until the maturity of the fire bonds, or until otherwise ordered by the board. This the defendant refused to do, believing the county board had no power in the premises. The county now seeks by *mandamus* to coerce a compliance with the said resolution.

The case turns upon the power of the county board to make the order in question.

The statutory provisions the more especially bearing upon the subject, are the following:

The county boards of the several counties shall have power to manage the county funds and county business except as otherwise specifically provided. Rev. Stat. 1874, chapter "Counties," sec. 25.

Whenever a tax is levied for the payment of a specific debt, the amount of such tax collected shall be kept as a separate fund in the county treasury, and expended only in the liquidation of such indebtedness; provided, that any surplus remaining in the treasury after full payment of such indebtedness shall be transferred to the common fund of the county. Ib. sec. 39.

The county treasurer shall receive and safely keep the revenues and other public moneys of the county, and all money and funds authorized by law to be paid to him, and disburse the same pursuant to law. Ch. "County Treasurer," sec. 4.

It is a general and undisputed proposition of law, says Dillon, that a municipal corporation possesses and can exercise the following powers, and no others:

First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—not simply convenient but indispensable. * * * Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract or incur any liability not authorized thereby. 1 Dillon Mun. Corp. § 55.

There is certainly no express authority given to the county board of a county to require the treasurer to invest funds of the county in securities as directed by the resolution in this case.

But it is contended that there is an implied power to that end embraced in the provision conferring upon county boards power "to manage the county funds and county business, except as otherwise specifically provided." This can not be understood to give to county boards the absolute and unlimited power of management of county funds, where there is the absence of any specific provision of law to the contrary. It hardly means more, we think, than a power to manage the county funds and county business according to law. ' See *Rothrock* v. *Carr*, 55 Ind. 334. We certainly can not allow to it any such scope as giving a general power to county boards to invest surplus funds in the county treasury in such manner as they shall see fit.

So far from there being any provision of law which in express words, or by necessary implication, authorizes the action taken by the county board in this case, section 39 above quoted, "that whenever a tax is levied for the payment of a specific debt, the amount of such tax collected shall be kept as a separate fund in the county treasury, and expended only in the liquidation of such indebtedness," would seem to prohibit the doing of what has been here attempted.

We would not be understood, however, as applying this provision with such strictness as to deny all power of investment whatever of the moneys of a sinking fund, and compel them to remain *in specie* in the county treasury, and lie idle and unproductive until required to be applied to the purpose for which they were raised.

In *Union Pacific Railroad Co.* v. *The United States*, an unreported decision of the United States Supreme Court, the court remark: "The duty of the manager of every sinking fund is to seek some safe investment for the moneys as they accumulate in his hands, so that when required they may be

promptly available." An investment, for instance, in the public funds of the United States is, all know, so readily convertible into money, that it would be essentially the equivalent of money. Such an investment we are not prepared to say would be incompatible with the requirement that the money represented by such investment should be kept as a separate fund in the county treasury and expended only in liquidation of the indebtedness it was raised to pay. But the same can not be affirmed of county securities, as to their being the representative of money. Constant experience shows that the promises to pay of a county are quite different from being the equivalent of money in hand.

We must hold that there was no rightful authority in the county board to make the order of investment which they did in this case, and that it is not a duty incumbent on the county treasurer to comply with such order. The petition for a writ of *mandamus* is denied.

*Mandamus refused.*