MORRIS R. LOCKE *et al.*

*v.*

WILLIAM DAVISON *et al.*

|111 19|
|56a 120|
|111 19|
|192 ¹364|
|111 19|
|209 162|

*Filed at Springfield September 27, 1884.*

1. COUNTY—*power to fund indebtedness or issue interest bearing bonds to take up county orders.* A county board has no authority of law to fund county indebtedness, or issue interest bearing bonds for money with which to take up outstanding county orders and obligations, without a vote of a majority of the legal voters of the county; and with such vote they are limited to eight per cent interest on such bonds.

2. SAME—*general powers of county board—statute construed.* The statute which provides that the county boards of the several counties shall have power "to manage the county funds and county business, except as otherwise specifically provided," does not give such boards an absolute and unlimited power of management of county funds, when there is an absence

of any specific provision of law to the contrary. It means no more than a power to manage the county funds and county business according to law.

3. SAME—*injunction, to prevent payment of interest on bonds illegally issued.* Where a county board issued bonds, bearing ten per cent interest, with which to liquidate outstanding county orders, the payment of interest on the same was enjoined by the circuit court at the suit of the tax-payers of the county, and this court affirmed the decree.

4. STATUTE—*specifying one mode, as excluding any other.* Where a statute points out a particular course to be pursued to effect a particular purpose, no other course can lawfully be pursued.

5. CHANCERY—*affirmative relief not on answer.* On bill filed by tax-payers of a county to restrain the county board from paying certain interest bearing bonds illegally issued by that body, for money with which to liquidate outstanding county orders, the circuit court enjoined the county board from paying interest on such bonds, but failed to decree that the principal sum should be returned, and this failure was assigned for error: *Held,* that the decree was not erroneous in this respect, as there was no cross-bill to warrant the giving of such affirmative relief to the bondholders.

6. SAME—*imposing equitable terms in granting relief.* On bill by tax-payers to restrain a county board from misappropriating county funds to the payment of interest upon bonds issued by such board in violation of the statute, in granting the relief sought it was *held,* that the rule, he who seeks equity must do equity, did not apply to the complainants, as they did not owe the debt, and that there was no error in not requiring them to pay the principal, with legal interest, as a condition to granting the relief sought. Had the county sought to be relieved from the payment of the stipulated interest, the rule might have been applied.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Jersey county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. BROWN, KIRBY & RUSSELL, for the plaintiffs in error:

The court erred in refusing to dissolve the injunction. The bonds were good as to the principal sum, even if illegal as to the interest. When a good thing and a bad thing are put together in one grant, it may stand as to the thing which is good. Addison on Contracts, (Morgan's ed.) sec. 299; *Bank* v. *Chilicothe,* 7 Ohio, 36.

The cases of *County of Hardin* v. *McFarlan,* 82 Ill. 138, and *Hall* v. *Jackson County,* 95 id. 352, were based upon the

statute in force at the time the bonds were issued. (Laws of 1863, p. 41.) This case is distinguished from those. By the act approved April 14, 1875, counties were empowered to fund their indebtedness.

The right to demand interest is placed on the ground that the county board made its contract to pay it, and obtained the money on the faith of such agreement. The court should have required the county to do equity, by ordering the payment of the money loaned to it, with six per cent interest. (*Mapps* v. *Sharpe & Co.* 32 Ill. 13; *Ferguson* v. *Sutphen,* 3 Gilm. 547.) But the bill should have been dismissed, as the board had, under the then existing statutes, power to make the contract it did. Rev. Stat. 1874, chap. 34, secs. 24, 25.

Prior to the acts referred to, this court has held that municipal corporations could contract to pay interest without express statutory authority. *City of Galena* v. *Corinth,* 48 Ill. 423; *Aurora* v. *Paddock,* 80 id. 263; *West* v. *Madison County,* 82 id. 205; *Madison County* v. *Bartlett,* 1 Scam. 67; *Pike County* v. *Horsford,* 11 Ill. 170; *Jackson County* v. *Rendleman,* 100 id. 379.

Messrs. HAMILTON & SLATEN, and Mr. A. A. GOODRICH, for the defendants in error:

A corporate body can not do any act, or make any contract, or incur any liability, not authorized by the statute or charter by which it is created. *Cook County* v. *McCrea,* 93 Ill. 236; *City of Champaign* v. *Harmon,* 98 id. 491; *Schott* v. *People,* 89 id. 195; *People* v. *Village of Crotty,* 93 id. 180.

It is contended that the board has the power it exercised, under the Revised Statutes of 1874, (chap. 34, sec. 25,) "to manage the county funds and county business, except as otherwise provided by law." In reply, we refer to *Cook County* v. *McCrea,* 93 Ill. 236.

The question of the power of the board to issue interest bearing orders, is settled adversely to plaintiffs in error in

*County of Hardin* v. *McFarlan*, 82 Ill. 138.    See, also, Laws of 1877, p. 145.

If the orders were otherwise legal, which we deny, they are usurious, and a fraud upon the tax-payers, and for that reason are void as to the interest, (*Payne* v. *Newcomb*, 100 Ill. 611,) and the plaintiffs in error would be only entitled to recover for the amount of principal due, after application of the interest received, in liquidation of the principal of the indebtedness. *Driscoll* v. *Tannock*, 76 Ill. 154; *Hawhe* v. *Snydaker*, 86 id. 197; *Reinback* v. *Crabtree*, 77 id. 183; *Mitchell* v. *Lyman*, id. 525.

The Supreme Court of this State has held repeatedly that municipal corporations, such as counties, are not required to pay interest, except upon an express agreement to pay such interest.    *South Park Comrs.* v. *Dunlevy*, 91 Ill. 49; *Madison County* v. *Bartlett*, 1 Scam. 67; *County of Pike* v. *Horsford*, 11 Ill. 170; *Hall* v. *Jackson County*, 95 id. 352.

Defendants in error were under no equitable obligation to do equity, as the debt the payment of which they sought to enjoin was not theirs.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

In the spring and summer of 1877, by reason of floods and other extraordinary occurrences, the expenses of the county of Jersey, in this State, were more than double the ordinary expenditures of the county, and in September of that year the county board found itself without sufficient funds, arising from the tax levy of 1876, to meet its requirements, and was compelled to anticipate the levy made in the year 1877, and collectible in the year 1878.    To meet the emergency, the board applied to James A. and Morris R. Locke, and made with them an agreement that the latter should furnish the sum of $8000, for the purpose of liquidating outstanding county warrants, and the board to pay them ten per cent interest,

semi-annually, and to issue interest bearing orders, payable September 10, 1878, for the money. The Lockes were to have $160 for their services in attending to the business, and to have issued to them eight orders, for $1000 each, due September 10, 1878, and bearing ten per cent interest, payable semi-annually. In pursuance of the arrangement, the Lockes purchased and took up, at their face value, orders of the county, issued at the September term, 1877, of the county board, for current expenses of the county, to the amount of $8058.38. In compliance with its contract, the county board issued nine county orders to the Lockes, in lieu of those taken up under the contract,—one for $58.38, and eight for the sum of $1000 each, bearing ten per cent interest, payable semi-annually, and each due September 10, 1878. The small order was paid, and at the March term, 1878, the county board issued a county order for $402.91, in payment of interest due at that time to the Lockes, which order was paid and cancelled by the county on April 29, 1878. On May 6, 1878, Davison, and other tax-payers of the county, filed their bill in equity, to enjoin the county authorities from paying these county orders issued to the Lockes, charging that the orders were issued without authority of law, and were void. Upon hearing, the circuit court found that the issuing of such interest bearing orders was without authority of law, so far as the agreement to pay interest is concerned, and by decree enjoined the payment of any interest on the orders. On appeal to the Appellate Court for the Third District, the decree was affirmed, and the Lockes sued out this writ of·error.

We regard the decision in *County of Hardin* v. *McFarlan*, 82 Ill. 138, as conclusive of this case in respect of the power of the county board to issue interest bearing bonds or orders in lieu of ordinary county orders taken up and surrendered. In that case, county orders had been surrendered by parties holding them, as in this case, and interest bearing bonds

were issued in lieu thereof, by order of the county board. It was held, that as there was a statute then in force, (Laws 1863, p. 41,) entitled "An act to enable counties owing debts to liquidate the same," that statute provided, fully, the mode, and the only mode, by which the debts of a county could be paid, and that the county court had no lawful authority to issue the interest bearing bonds in that case, and that the interest money on the bonds, which was sued for, could not be recovered. In the attempt to distinguish the present case from that, it is said the statute therein referred to was not in force at the time the orders here in question were issued, and that since that decision the powers of counties and county boards in this respect have been greatly enlarged. But there were other statutes in force at the time the interest bearing orders in this case were issued, which provided fully the means to which the county board could resort to pay any indebtedness exceeding seventy-five cents on $100 valuation of property, or to fund the outstanding debt of the county, viz., sections 27 and 28, chapter 34, of the Revised Statutes of 1874, and the act approved and in force April 27, 1877. (Laws 1877, p. 158.) This statute of 1877 provides, that in all cases where any county has issued any bonds or other evidences of indebtedness for money, or has contracted debts which are the binding, subsisting, legal obligations of such county, and the same remain outstanding and unpaid, bonds may be issued to fund such indebtedness, upon a vote of a majority of the legal voters of such county; and that statute limits the rate of interest on bonds issued to liquidate outstanding indebtedness, to eight per cent per annum. The principle applied in the former case was, that where a statute points out a particular course to be pursued to effect a particular purpose, no other course can be lawfully pursued. That principle, we think, applies with even stronger force under these statutes, which were in force when these interest bearing orders were issued, than under the statute of 1863,

in force at the time of the issuing of the bonds in the case of *County of Hardin* v. *McFarlan.*

The enlarged powers upon the subject, referred to as having been given to counties and county boards since the decision in that case, are: "Each county shall have power  *  *  * Third, to make all contracts, and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate powers." "The county boards of the several counties shall have power  *  *  * Second, to manage the county funds and county business, except as otherwise specifically provided." (Rev. Stat. 1874, chap. 34, secs. 24, 25.) This last provision came under the consideration of this court in *Cook County* v. *McCrea,* 93 Ill. 236, where we said in regard to it: "This can not be understood to give to county boards the absolute and unlimited power of management of county funds, where there is the absence of any specific provision of law to the contrary. It hardly means more, we think, than a power to manage the county funds and county business according to law."

We find nothing in these subsequent supposed enlargements of the powers of the county board, or any change of law, which should cause a variance from the decision in the *McFarlan case,* or interfere in the least with its applying fully to and governing the present case, under the law in force now and at the time of issuing these interest bearing orders. . We do not perceive that it makes any difference, as is contended, that there had been a previous contract for the furnishing of the money for the purpose, and that it was in pursuance of such antecedent contract that the money was furnished to take up common county orders, and interest bearing orders issued therefor. Whether with or without any contract beforehand, the transaction was one of funding ordinary county orders not bearing interest, by issuing interest bearing orders therefor, which we hold the county board had no authority to do except upon a vote of the majority of

the legal voters of the county,—and even then the interest could not be more than eight per cent, when here it is made ten per cent, and $160 paid additional.

It is urged that the decree is erroneous in not requiring that the principal sum should be returned. There was no cross-bill filed to warrant the giving of such affirmative relief. The relief asked by the complainants was granted but in part, restraining payment only of any interest.

But it is insisted that if the court saw fit to enjoin the payment of any interest, it was inequitable to deny plaintiffs in error all compensation for the use of their money. The arrangement made was doubtless, under the evidence, a beneficial one for the county, and it would be equitable that the plaintiffs in error should be allowed lawful interest upon the money they advanced; and if this were a case (as, if the county were the complainant,) where the rule could be applied that he who seeks equity must do equity, and relief might be granted only upon the condition of complainant doing equity, we would think the relief granted here should only be upon the equitable terms of complainant paying lawful interest, in analogy to the rule in that respect which prevails when one seeks relief in equity against an unlawful, usurious contract. But the county here,—the debtor,—is not complaining. The county board is content, and willing to perform its contract. The complainants are only taxpayers, and are seeking relief both against the county authorities and the creditors, to prevent misappropriation by the former of public moneys for the benefit of the latter. As the complainants—mere tax-payers—do not owe the money themselves, it would not be a just condition to impose upon them that they should pay the lawful interest on the money. Relief upon such a condition would be none at all. It would be better to submit to the increase of tax which would be occasioned by the payment of the orders in full, as contracted to be paid. It being impracticable, then, in such a case as

this, to apply the equitable condition of relief,—of payment of lawful interest,—we do not see that there was error in the decree in omitting it.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*