## City of Chicago, et al., v. Max L. Brede.

### Gen. No. 12,443.

1. MUNICIPAL CORPORATIONS—*what powers exercised by.* Municipal corporations possess and can exercise only the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the power expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

2. BOND IMPROVEMENT FUND—*municipality has no power to establish.* A municipal corporation has no power to create and appropriate for what is styled a bond improvement fund, the purposes of which are to pay interest charges and to purchase bonds issued by it.

Injunctional proceeding. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed July 17, 1905.

EDGAR BRONSON TOLMAN, Corporation Counsel, and FRANK JOHNSTON JR., Assistant Corporation Counsel, for appellants.

STEIN, MAYER, STEIN & HUME, for appellee; PHILIP STEIN, of counsel.

City of Chicago v. Brede.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

In this case the Hon. Murray F. Tuley, Chancellor, who heard it in the court below, rendered an opinion in writing, in which the cause is fully stated. This opinion is as follows:

"This is a bill filed by Max L. Brede as a taxpayer seeking to enjoin the expenditure of $140,000 included in the annual appropriation bill of the city for the year 1905 under the title, 'Board of Local Improvements, $150,000' for 'Improvement Bond Fund,' payable from miscellaneous sources, for the purchase of improvement bonds, coupons and vouchers issued in special assessment proceedings, bearing a warrant number above 30,000, when the respective funds against which said bonds, coupons and vouchers have been issued, have been exhausted and deficiencies exist on account of delays in the collection of said special assessments, by reason of assessed property having been stricken off, etc., or purchased by the city at the annual tax sale, for default of bidders, failure to provide for the payment of special assessments against school property, pending litigation, and appeals or writs of error in special assessment cases, or by delay in the enforcement of the corresponding special assessment for any reason.

The so-called improvement bond fund appears to have been established by an ordinance passed in April, 1903:

'To prevent default in special assessment improvement bonds and lessen the cost of the construction of local improvements by special assessments.'

The fund was to be used at the discretion of the Board of Local Improvements for the purchase of improvement bonds, coupons and vouchers issued in special assessment proceedings, bearing a warrant number above 30,000 when the respective funds against which said bonds have been issued have been exhausted and deficiencies exist on account of delays in the collection of said special assessments by reason of assessed property having been stricken off to, or pur-

chased by, the city at the annual tax sale for default of bidders, etc., as stated in the appropriation item.

It appears that $50,000 was appropriated in 1903 and the same amount in 1904.

The question in this case is: Did the city council transcend its lawful powers in passing the ordinance referred to and in appropriating $150,000 in the annual appropriation bill of 1905?

When the right of the city council to make an appropriation of this nature is challenged, the first question is: Under what grant of power, if any, did or could the council have acted?

It is settled law that municipal corporations possess and can exercise only the following powers: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the power expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Cook County v. Samuel H. McCrea, 93 Ill., 236.

The charter or statute by which a municipal corporation is created is its organic act.

The corporation can do no act or make any contract or incur any liability not authorized thereby, or by some legislative act applicable thereto. The corporation exists as a city solely and alone by the authority of its act of incorporation, and all acts beyond the scope of the powers granted are void. It necessarily follows that a corporation can exercise no power or can do no act which is forbidden by its charter or the statute creating it.

It is not pretended on the part of the city that there is any express grant of power to purchase local improvement bonds or to appropriate money to the use of a special fund for any of the purposes named in the ordinance.

The charter of the city provides for the making of local improvements and the manner in which the money shall be raised to pay therefor.

Section 73 of the Local Improvement Act provides that the city shall not be in any way liable for failure to collect

City of Chicago v. Brede.

any special assessment levied for local improvements, and that the contractor shall have no claim or lien upon the city in any event for the work done, except in the collection of the special assessment.'

It is made the duty of the city to use reasonable diligence for the collection of the assessment levied for the payment of the work and of the city treasurer to keep a separate account with each special assessment.

Section 90 of the act extends the non-liability of the city, practically in the same language, as to the payment of vouchers or bonds issued upon any such special assessment, and interest thereon. It is apparent from the whole tenor of the act that it was the intent of the legislature to prohibit the city from becoming in any way liable for the work done in such local improvements or for the payment of any vouchers or bonds issued therefor and for the collection of the money to pay for the same. The intent was to provide for a special fund to which the contractor and the bondholders could look for payment; to segregate local improvements from all other improvements and absolve the city from all liability on account thereof.

It is, therefore, evident that the power to create this special fund and to make this appropriation in question is not found in the provisions of the city charter concerning the making of local improvements. If the power exists at all, it must exist under some general grant of power, as no specific grant of power can be found to establish this 'improvement bond fund' or to make the appropriation in question.

Article 5 of the charter treats of the powers of the city council, and section 1 enumerates such powers in ninety-six separate clauses. I know of no charter or general law for the control of cities where there is such careful specification of the powers granted the municipality as is found in the act under which the City of Chicago is incorporated. Some of the powers contained in the ninety-six clauses of said section 62 are in general terms, but followed by specifications as to the cases in which and the extent to which such

general powers shall be exercised. For instance, there is conferred the general power 'to control the property and finances of the city,' 'to lay out, establish, open, grade, pave streets, sidewalks,' etc., which are followed by limitations and prohibitions as to the exercise of such general powers.

There are a great many specific provisions as to the manner in which local improvements shall be inaugurated as to carrying the same into effect by contract; the issuing of bonds in the payment of the same; the levying and collection of special assessments upon the property benefitted by such local improvements; the payment for same out of the special fund so raised; and provide in great detail a complete scheme for the making of such local improvements and the payment for the same by the property benefitted thereby.

It is evident, in the opinion of the court, that in this charter it was the intention of the legislature that these specific provisions and specifications of the charter as to the exercise of the powers conferred should be limitations upon such general grants of power.

'Where there are both special and general provisions of a charter the power to pass by-laws under the special or express grant can only be exercised in the cases and to the extent as respects those matters allowed by the charter or to the incorporation act.' Sec. 316, Dillon on 'Corporations,' 4th ed.

'The power to pass necessary by-laws is incidental, but this power is limited, not only by the terms, but also by the spirit and design of the charter and the general principles and policy of the common law.' Note Sec. 316, Dillon, and cases cited.

In the case of City v. Cox, 5th Ind., 38, the city charter contained a general provision that the city might create debts, but this was followed by a provision authorizing the corporation to construct wharves, water-works, etc. It was held that the general power to create a debt for the special purposes stated in the charter only, and that the term 'debts' is construed to mean specifically debts for the legitimate and proper purposes, and not for all purposes.

Under the second clause of said section 62 the power is given the city council: 'To appropriate money for corporate purposes only and to provide for the payment of the debts and expenses of the corporation.'

If the power exists, as claimed in this case, to make this appropriation and to create this 'bond improvement fund,' it must be found under the general power of appropriating money. Under the rule laid down the power to appropriate money for corporate purposes would be construed to mean to appropriate money for specified legitimate and proper municipal purposes especially enumerated in the charter.

Under this second clause the power 'to appropriate money for corporate purposes only' would seem to be intended only as a limitation as to what purposes money could be appropriated for, and not as a grant of power to appropriate money. The power to appropriate money would exist as an implied power by necessary implication, and this clause recognizes such power as existing, but limits the extent to which it can be exercised. But even construing it as a grant of power to appropriate money for all corporate purposes, can the appropriation in question be considered a corporate purpose?

It is claimed that it is a corporate purpose to keep up the credit of these special assessment bonds and not allow them, because of a shortage of funds, collected by special assessment to pay the interest or to pay the bonds in full as they mature, to become discredited and put upon the market at less than par. It is contended that besides discrediting the particular bonds, the effect has been and would be to discredit also all other bonds of the city.

The case of Taylor v. Thompson, in the 42nd Ill., page 9, is relied upon as giving the definition of a corporate purpose, and sustaining the contention of the city. That was a question of constitutionality of an act authorizing the Town of Odell (among others) to levy a tax to pay bounties to persons drafted in the army. The act was sustained as constitutional and authorized by the provisions of the constitution giving the legislature power "to vest corporate

authorities of cities, towns, etc., with power to assess and collect taxes for corporate purposes,' etc. 5th and 6th Secs., Art. Constitution of 1870.

There is a marked difference between that case and the one at bar. In the constitution there are no specifications of corporate purposes, but here the corporate purposes delegated to the city are enumerated, specified in great detail. In that case the court holds:

'A tax for corporate purposes may be defined to mean a tax to be expended in the manner which shall promote the general prosperity of the municipality which levies it; if it appears that a tax has been voted and levied with' honest purpose to promote the general wellbeing of the municipality, and was not designed merely for the benefit of individuals or of a class, its collection should not be stayed by the courts.'

In this case the chief purpose of the appropriation was to provide a fund to meet the interest and so much of the principal as the special assessment tax collected fell short of the amount levied for that purpose.

It may be true that the city gets an indirect benefit in its credit and that such work, as contended for, can be let cheaper with this kind of a provision made by this ordinance for keeping the bonds in good credit, but the main object is to lend the credit of the city to aid the special assessment method of making local improvements, which the city has no power to do directly. The city could levy no tax, nor could it borrow money to pay for deficiencies in the collection of the special assessments; yet it takes moneys belonging to the general fund to meet such deficiencies.

It is, however, contended that the city does not levy a tax nor assume any obligation, but merely takes money from one fund in the city treasury to aid in the carrying out of the power given by the charter to make local improvements by special assessments, and only advances moneys which it can collect through assessments levied or to be levied.

The city raises money for corporate purposes under its charter powers 'from miscellaneous sources'; it takes this

money raised for legitimate corporate purposes specified in its charter, and appropriated it, not for the purposes expressly authorized, but, in fact, for purposes prohibited by the spirit and intent of the charter provisions as to the making and paying for local improvements.

While it is clear that the charter contemplates that the city shall in no way become liable for the cost of such improvement or upon the bonds issued to the contractor therefor, yet the contractor, in bidding for the work, knows that in case there is not money sufficient to pay the interest on the bonds and the principal as the same become due, that the city has appropriated this $150,000 for the fiscal year 1905 to provide against such contingency.

If the legislature had intended that the city should thus aid in making such local improvements, there can be no doubt that it would have so declared in express words in the act concerning local improvements.

It may be admitted that the scheme of a 'special bond improvement fund' to aid the city in making local improvements has been so far a success, it appearing that the money appropriated in 1903 and 1904 has resulted in making special assessment bonds, which were before at a discount, appreciate by reason of the assistance rendered by the city through this 'improvement bond fund.' It may also be admitted that the making of local improvements and the letting of contracts for the same, were benefitted by this new scheme, but the legislature has singled out the 'making of local improvements' as a special matter to be carried on without the financial aid of the city and to be paid for out of a special fund, to-wit: the amount collected by the city upon the special assessments levied for the respective improvements, and in no other way.

The most that can be said is that the city, as a corporate body, and all of its inhabitants, are incidentally benefited by reason of the establishment of this 'bond improvement fund', but the primary object is not for the general benefit of those interested as a class in the respective improve-

ments, and to aid in making and carrying out of such respective local improvements.

It is contended that the city does not pay the interest coupons or bonds, but purchases them, relying for reimbursement upon the money to be collected upon the special assessments levied, or to be levied, for the respective local improvements. It is probable that the city has the right to reimburse itself for moneys so paid by and through the special assessments, but it by no means follows that the so-called purchase is not, except as to those liable to special assessment, in fact a payment. It makes but little difference what you call a transaction, the question is as to the effect of the transaction. If an individual gives his note for a certain amount, payable out of a special fund to be collected by him, and he afterward purchases that note, in point of law, it will come pretty near to being a payment of the note. But, whether considered as a payment or a purchase, this much is clear, that the city assumes the risk of future collections upon assessments, a risk which the law placed upon the contractor or the holder of the bond. If any part of the assessment is for any cause not collected, the loss is upon the city.

It is claimed that the ultimate loss upon assessments of this character will not average more than one-half of one per cent. There are several millions of dollars of such bonds outstanding, but the amount of the loss the city may sustain is unimportant, as the only concern of the court is as to the right to thus appropriate the public moneys, and this without regard to the amount in controversy.

The city borrows millions of dollars every year in anticipation of the collection of the annual taxes, for which it issues its certificate of indebtedness, payable only out of the taxes collected, and it may issue many millions of dollars of certificates, possibly, under what is known as the Mueller Law, payable only out of the receipts of the traction railways if it takes them over.

If it can take money for the miscellaneous receipts to aid local improvement bonds, payable only out of assessments

levied for local improvements, no reason is perceived why it cannot do the same thing to aid the certificates for indebtedness in both the cases above mentioned. A precedent now made in a small matter might have serious consequences hereafter.

The same arguments used to sustain this scheme, to-wit: that the city is benefited, are always found in attempts to sustain illegal appropriations, or the exercise of powers not expressly conferred upon municipalities. The same argument that the city is benefited has been used in attempts to sustain appropriations for the entertainment of official visitors, appropriations to aid in the erection of manufactories, the building of railroads into a city or village, to borrow money, to contest the removal of a county seat, etc.

The authorities are clear as to the effect that the welfare and the interest of the whole city must be the primary object of the alleged corporate purpose, and it is not sufficient that incidental benefit may accrue from the undertaking or expenditure. Equity will not sustain attempts to indirectly do what is expressly or impliedly prohibited.

In the 100th Wis., Rice v. Milwaukee, page 522, it was held that where, for the purpose of paying overdrafts on their funds, money was drawn from a fund over which the city has no control, except to pay regular demands upon it, the amount of the overdrafts should be considered a debt in determining the amount that the city could become indebted.

To show that the courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of powers of municipal corporations, reference may be made to the case in the 31st Maryland, page 375, Baltimore v. Gill.

There the city council endeavored to raise a large sum of money by pledging some stock that the city owned, with the proviso that the city should not be liable in any way for the amount of money raised; that the only security therefor should be the stock pledged. The court held that

the raising of the money was, in fact, a borrowing of it and a becoming indebted by the corporation.

In a case in the 107th Iowa, 90, an attempt was also made to evade indirectly the limitation in the constitution against indebtedness, and it was there held that the city could not do indirectly what it had no power to do directly.

The only safety of the public lies in a strict construction of the powers granted to municipalities, and I know of no case where there is a special designation of corporate purposes to be exercised, the corporation has been permitted—under the general power to appropriate money for corporate purposes—to exceed the limitations imposed by the charter, upon the pleas, as in this case, that there was an incidental benefit to be derived by the city at large.

The motion for injunction must be granted.

After the conclusion of the argument upon said motion for said preliminary injunction, it was stipulated in open court by counsel for the respective parties, that in order to speed the final determination of the cause and to lessen the cost of litigation, and because no other relief was prayed in the bill of complaint upon the issuance of said injunction, and no other issues were made or presented by the pleadings than those which had been considered upon the hearing of said motion, that the hearing upon said motion be deemed and taken as a final hearing of the cause, and that the allegations of said bill of complaint and of said affidavit of Sydney Stein should be taken and considered as evidence duly introduced upon a final hearing of the cause, and that the answer of the said defendants and the amendment to said answer should be further taken and considered as evidence duly heard upon the final hearing of said cause.

And thereupon, the said cause coming on for final hearing upon said bill, answer, amendment to answer and the replication filed herein, each of the foregoing documents hereinbefore set forth were again offered and read in evidence upon such final hearing, and the foregoing was all the evidence introduced, offered or received on the hearing of the said motion and on the hearing of the said cause."

Thereupon the court found that it had jurisdiction of the subject matter of the cause and of the parties by their voluntary appearance herein; and that the equities in this cause are with the complainant; and ordered that the preliminary injunction issued herein "be and the same hereby is made permanent"; and that the complainant have and recover from the defendants his costs.

From this decree the defendants perfected an appeal to this court.

The foregoing opinion so clearly expresses our judgment in the premises that we adopt it as the opinion of this court.

The decree of the Circuit Court is affirmed.

*Affirmed.*