Lindblad v. Board of Education.

---

## Andrew Lindblad v. Board of Education of Normal School District of McLean County, et al.

1. BOARD OF EDUCATION—*when courts will not interfere with.* Courts will not interfere with the exercise by a board of education of its discretionary powers unless such discretion is manifestly abused to the oppression of a citizen.

2. INJUNCTION—*what does not confer jurisdiction to award, as against board of education.* The mere fact that a board of education may have illegally delegated a portion of its discretionary powers and may likewise have entered into a contract in part or in whole void, will not confer jurisdiction upon a court of equity to award an injunction at the instance of a citizen who has not alleged some special injury accruing or liable to accrue to himself as a taxpayer in the district or as a patron of the public schools.

Injunctional proceeding. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed October 9, 1905.

Wight & Alexander, for appellant.

Welty, Sterling & Whitmore and Thomas W. Tipton, for appellees.

Mr. Justice Baume delivered the opinion of the court.

Appellant, a taxpayer and legal voter in the Normal School District of McLean County and a patron of the common schools in said district, filed his bill in equity against the Board of Education of Normal School District, the Board of Education of the State of Illinois, and certain individuals, appellees, for the purpose of having a certain contract entered into between said Board of Education of Normal School District and said Board of Education of the State of Illinois, merging the model school of the Illinois State Normal University into the public school system of the town of Normal, declared illegal and void and for an injunction restraining the Board of Education of Normal School District from carrying out the terms and conditions of said contract and from issuing orders upon the treasurer of said district directing him to pay the salaries of certain critic teachers and of Enoch A. Fritter, superintendent.

The contract is as follows:

"This agreement made and entered into this eighteenth day of April, 1901, by and between the Board of Education of the Town of Normal, County of McLean and State of Illinois, and the Board of Education of the State of Illinois:

Witnesseth: That the Model School of the Illinois State Normal University shall be merged into the public school system of the town of Normal and that said Normal University shall be permitted to use certain grades or rooms as practice schools under the following conditions:

1.   Pupils of the first five years of school life shall attend the West Side school or the East Side system under regulations fixed by the Public School Board.

2.   Pupils attending the East sub-district doing the work of the first eight school years shall be distributed among twelve rooms or grades, the pupils to remain on the average of two terms or twenty-four weeks in each grade.

3.   The twelve grades shall be housed, six (or seven) in the Model School, the rest in the Public School Building.

4. The grades in the Model School Building shall be grades or rooms 1, 2, 3, 4, 11, 12 or such other rooms as may be agreed upon by the Superintendent of the Public School and President of the University.

5. The High School Department of the Model School shall be abandoned, but the University shall be permitted to furnish teachers for six high school classes each term, such classes to be selected by the city superintendent and such student teachers to be approved by him. In such classes lesson plans shall be submitted to the High School authorities and shall be under their supervision and direction. Any such teacher may be deprived of his class at any time his work be not satisfactory to the superintendent.

6. The University shall furnish janitor, fuel, repairs and ordinary school supplies for the grades housed in the Model School building. The Public School Board shall furnish the same for the grades in the Public School building.

7. The University may be permitted to use the grades in the Model School building and one or two grades as needed in the Public School as a practice school.

8. The Public School Board shall pay the teachers in the practice schools not less than $42.50 per month.

9. In each room so used as a practice school the teachers shall be paid by the University such additional sum as may be necessary to secure persons able to supervise and direct the work of student teachers in the most thorough manner. Such additional salary shall not be less than $234 per year. The University shall not be bound by this section to pay more than $450 per year additional salary to any critic teacher.

10. No teacher shall be permitted to teach in the practice school except members of the senior class or persons whose general experience has eminently fitted them for teaching.

11. At a date not later than April 1st, the University authorities shall notify the Public School Board what grades the University shall wish to use the following year as practice schools.

12. In all grades used as practice schools the teachers shall be selected by the concurrent action of the State Board and of the Public School Board. In all grades not used as practice schools the Public School Board shall have exclusive right to select the teachers.

13. The course of study shall be prepared by the President of the University and the Superintendent of Schools

and submitted to the Public School Board for amendment and adoption.

14. Rules and regulations relating to rights and obligations of parents' and pupils' reports, discipline, promotions and all other matters of general character shall be made by the Public School Board.

15. The University shall have power to make necessary regulations in regard to the use of the University property and in regard to the mode of instruction and daily program in the practice schools.

16. All text-books that pupils are required to buy shall be prescribed by the public school authorities.

17. If copies of such regularly adopted text-books are needed by indigent children, they shall be furnished by the Public School Board.

18. The school year in the public school shall be divided into terms in conformity with the three regular terms of the University calendar.

19. Tuition in all grades shall be free to all residents of Normal.

20. Rates of tuition for non-resident pupils shall be fixed by the Public School Board, and such tuition shall be paid into the Public School treasury.

21. All pupils attending the grades in the Model School building shall have the privilege of the campus of the University, library and gymnasium under such regulations as the University may adopt.

22. The high school pupils may be permitted to use the campus for a playground and shall be granted one hour per day of physical culture in the gymnasium under the supervision of the teacher of physical culture on such terms as may be agreed upon by the President of the University and the Superintendent, providing such privileges shall not conflict with the paramount rights of the Normal students.

23. The University instructors in music, drawing and physical culture shall supervise the work in their respective departments in the various grades of the Normal Public Schools. One-third of their time shall be thus at the disposal of the Public School authorities.

24. These articles of agreement may be amended by the concurrent action of the Public School Board and the State Board of Education.

25. Either party to this agreement may cause the same to terminate on June 30, of any year, by giving written

notice to the other party at least six months prior to the proposed termination.

WESLEY GRINSTEAD, President.

ENOCH A. FRITTER, Clerk.

For the Board of Education of the Normal School District, Normal, Ill.

THE BOARD OF EDUCATION OF THE STATE OF ILLINOIS,

By William H. Green, President.

[SEAL] Alfred Bayliss, Secretary."

The bill alleges that the public schools of the town of Normal are conducted under and in pursuance of the terms of said contract and that the students in attendance upon the Illinois State Normal University and who teach the grades housed in the model school building and one or more of the grades housed in the public school buildings of Normal School District are not required to have certificates from the county superintendent of schools of McLean county; that appellee Enoch A. Fritter is superintendent of the public schools in the Normal School District and receives a salary as such superintendent of $167.64 per month, and that the said Fritter also performs educational work for appellee the Board of Education of the State of Illinois, in supervising, directing and controlling the work of the critic teachers employed under the contract, and receives an additional salary therefor from said Board of Education of the State of Illinois.

The chancellor sustained a general demurrer to the bill interposed by appellees and entered a decree dismissing the bill for want of equity. To reverse this decree, appellant prosecutes this appeal.

The town of Normal was incorporated by special act of the legislature approved February 25, 1867. Article VIII of the charter provides for a public school system; that the town of Normal shall constitute a school district, known as "Normal School District;" that the governing body of the public schools of such district shall be styled "Board of Education of Normal School District," and shall consist of five members, each of whom shall hold office for a term of five years, one to be elected each year on the first Monday

in March. Section 4 of said article provides: "Said Board of Education shall be a body corporate and politic, by the name and style of Board of Education of Normal School District; may have a common seal and change the name at pleasure, and as such may contract and be contracted with, sue and be sued, plead and be impleaded in and before any tribunal having competent jurisdiction."

Section 11 provides: "The said Board of Education shall have the entire management and control of all the common schools and transact all business which may be necessary in relation to said common schools in said district, and shall have all the rights, power and authority necessary for the proper management of the schools and school funds, with the power to make all such rules, orders and requirements as they may deem necessary to carry their powers and duties into effect and perfect a good system of public instruction and common schools in said district."

Section 13 provides: "Said Board shall have power and authority to divide said School District into two or more districts, when in the opinion of the Board it shall seem advisable."

The jurisdiction of a court of equity to award the decree sought by the bill in this case, is invoked upon three grounds. First, that the contract in question is *ultra vires*, illegal and void for the reason that the Board of Education of Normal School District has thereby surrendered or delegated, in whole or in part, certain discretionary powers vested in it as a *quasi* municipal corporation by its charter, to its superintendent Enoch A. Fritter, and to the Board of Education of the State of Illinois; second, that certain persons named in the bill as defendants and designated in the contract, critic teachers, and to whom is paid $42.50 per month, each, by the Board of Education of Normal School District, are also in the employment of and receive pay from the Board of Education of the State of Illinois; that the duties of said critic teachers are to supervise and direct the work of the student teachers who teach in those grades of the common schools denominated in the contract,

practice schools, and that said critic teachers devote very little, if any, of their time to the work of teaching the pupils attending the public schools; third, that Enoch A. Fritter receives a salary as superintendent of the Normal School District of $167.64 per month, and also performs educational work for the Board of Education of the State of Illinois in supervising, directing and controlling the work of said critic teachers, and receives therefor a salary from said Board of Education of the State of Illinois, in addition to the salary paid him by the Normal School District.

The management and control of the common schools of the district involves, primarily, the exercise of discretionary and not merely ministerial functions. These discretionary functions are by the charter creating the Board of Education of Normal School District vested in such board and may only be exercised in the manner thereby authorized. Cook County v. McCrea, 93 Ill. 236. Such discretionary functions are in the nature of trusts imposed by legislative authority upon the Board of Education, and call for the exercise by it, as trustee for the public, of its exclusive judgment in their performance, and cannot be delegated by it to another. 1 Dillon's Municipal Cor. (4th ed.), 154; East St. Louis v. Wehrung, 50 Ill. 28; City of Chicago v. Trotter, 136 Ill. 430. Courts, however, will not interfere with the exercise by a municipal corporation of its discretion unless such discretion is manifestly abused to the oppression of a citizen. Canal Commissioners v. Village of E. Peoria, 179 Ill. 214.

Appellant has not directed our attention to any specific provision in the contract which manifests an abuse of discretion by the Board of Education of Normal School District, to his injury or oppression, nor does he in his bill allege that any injury or oppression has resulted or will result to him by carrying out the terms of the contract. It may be conceded that the Board of Education of Normal School District has, by the contract in question, surrendered or delegated in whole or in part, some of its discretionary powers and functions to its superintendent and

to the Board of Education of the State of Illinois, and that said contract is, in these respects, if not as a whole, illegal and void, but this alone will not confer jurisdiction on a court of equity to enjoin its enforcement.

Appellant must allege some special injury accruing or liable to accrue to himself as a taxpayer in the district or as a patron of the public schools, and in the absence of any such allegation he cannot maintain a bill to enjoin the enforcement of a contract, solely upon the ground that such contract as made, contravenes a dry, abstract, legal duty. Chicago v. Union Building Ass'n, 102 Ill. 379.

An attempt is made to bring the case at bar within a well recognized field of equity jurisdiction, by the allegations in the bill that the payment by the Board of Education of Normal School District of $42.50 per month to each of eight critic teachers, and of $167.64 per month to its superintendent, Enoch A. Fritter, is unauthorized and illegal.

The appointment of a superintendent of the public schools of the district and of teachers for said schools and the fixing the salary of such superintendent and teachers are purely discretionary powers vested exclusively in the Board of Education of Normal School District, and a court of equity will not presume to direct or prevent the exercise of those powers. Neither the appointment of a person, as superintendent, who is engaged in other educational work for which he is paid a salary, nor the appointment of and payment of salaries to critic teachers, is prohibited by the organic law of the Normal School District.

The allegation in the bill that student teachers are permitted to teach certain high school classes, without having first procured certificates from the county superintendent of schools of McLean county, does not invest a court of equity with jurisdiction to enjoin the Board of Education from permitting such person to teach. The contract contains no provision that the student teachers shall not be required to have such certificates, and the bill does not allege that they are paid for their services out of the

common school funds of the district. Furthermore, such student teachers may, for anything that appears to the contrary, have certificates granted to them by the state superintendent of public instruction authorizing them to teach in any county and school district in the State.

The bill does not allege that the critic teachers or the student teachers employed under the contract are incompetent or inefficient; that the taxes are increased by reason of the performance of the contract; that the instruction or discipline of the pupils in the public schools is impaired or prejudiced by it. It may well be that the contract is not enforceable by either party to it; that it is merely a status at will, but so long as it fulfills the object for which it was manifestly entered into, viz., the proper instruction of pupils attending the public schools of the district, and no injury to appellant is alleged, he cannot enjoin its enforcement. It does not appear from the bill but that the arrangement is mutually beneficial to the parties and advantageous to every person and interest involved, and appellant does not show himself to be in any manner aggrieved. The decree of the Circuit Court dismissing the bill for want of equity is right and will be affirmed.

*Affirmed.*